TOOTLE & MAULE, PLAINTIFFS IN ERROR, V. MORRIS
ELGUTTER, DEFENDANT IN ERROR.

**Guaranty.** A guaranty in these words, "Please let Mr. John
Newman have credit for goods to the amount of one hundred
dollars, and for the payment of which I hold myself responsi-
ble," *Held*, To be a continuing guaranty, and the limitation
therein is as to the amount for which the guarantor will hold
himself liable, and not as to the credit to be given.

ERROR to the district court for Douglas county. Tried
below before SAVAGE, J.

*W. J. Connell*, for plaintiff in error, cited: *Sickle v.
Marsh*, 44 How. Pr., 91. *Ringe v. Judson*, 24 N. Y.,
64. *Boehne v. Murphy*, 46 Mo., 57. De Colyar on Guar-
antees, 214, also 240 to 248.

*Simeon Bloom*, for defendant in error, cited: *Reed v.
Fish*, 59 Maine, 358. *Lawton v. Mauer*, 10 Rich. Law
(So. Car.), 323. *Wilde v. Haycraft*, 2 Duvall (Ky.), 309.
*Bussier v. Chew*, 5 Phila. (Pa.), 70. *Boston & Sandwich
Glass Co. v. Moore*, 119 Mass., 435. *Kay v. Groves*, 6
Bing., 276. *Kay v. Groves*, 3 Moore & Payne, 634.
*Cremer v. Higginson*, 1 Mason, 323. *White v. Reed*,
15 Ct., 457. *Congdon v. Read*, 7 Rhode Is., 576. *Al-
dricks v. Higgins*, 16 Serg. & Rawle, 212. *Hall v. Rand*,
8 Ct., 560. *Sallee v. Mengy*, 1 Bailey Law (So. Car.), 620.

MAXWELL, J.

This is an action upon the following guaranty:

"OMAHA, NEBRASKA, March 11th, 1878.

"DEAR SIR: Please let Mr. John Newman have credit
for goods to the amount of one hundred dollars, and for
the payment of which I hold myself responsible.

"(Signed)                              M. ELGUTTER."

It is alleged in the petition that the instrument was delivered to the plaintiff and was intended as a continuing guaranty. The defendant in his answer, denies that the guaranty was intended to be continuing. On the trial of the cause, the court directed a verdict for the defendant, and judgment was rendered thereon dismissing the action.

The testimony tends to show that Newman was insolvent, and that the defendant was anxious to aid him to start in business; that the plaintiff sold to Newman from time to time, goods to quite a large amount, and received payments of $25, $50, or $75, when convenient for Newman to pay, and that these transactions continued up to the time of his death, which occurred in 1880; and that he was owing them an amount greatly in excess of $100. There is also testimony tending to show that the defendants had stated to the plaintiffs during the period at which the goods were being furnished, that he considered himself responsible on the guaranty.

The rule is well settled that where a contract has been reduced to writing, without any uncertainty as to the object and extent of the obligation, the presumption is that the entire contract was reduced to writing, and oral testimony as to declarations at the time it was made are not permitted, except in a direct proceeding for that purpose to change the written instrument. In other words, parol contemporaneous evidence is not admissible to change the terms of a valid written contract. 1 Greenleaf Ev., § 275. But this restriction applies only to the language of the contract. It may be read by the light of surrounding circumstances—by the construction given to it by the parties themselves, in order more perfectly to understand the intention of the parties. In such cases the court is not to inquire what the parties may have secretly intended, but what is the meaning of the words they have used. 1 Greenleaf Ev., § 277.

As is said by a late writer, the general rule that unam-

biguous language in a contract must control, does not exclude extrinsic evidence of the subject matter and other surrounding circumstances to enable the court to consider what the parties saw and knew in order to ascertain their meaning. Abbott's Trial Ev., 508.

In *Hargrave v. Smee*, 6 Bing., 244, Chief Justice Tindal said: "The question is, what is the fair import to be collected from the language used in this guaranty? . The words employed are the words of the defendant, and there is no reason for putting on a guaranty a construction different from that which the court puts upon any other instrument. With regard to other instruments the rule is, that if the party executing them leave anything ambiguous in his expressions, such ambiguity must be taken most strongly against himself."

In *Mason v. Pritchard*, 12 East, 227, it is said: "The words were to be taken as strongly against the party giving the guaranty as the sense of them would admit."

In *Lawrence v. McCalmont*, 2 How., 426–449, it is said: "Some remarks have been made on the argument here, upon the point, in what manner letters of guaranty are to be construed; whether they are to receive a strict or liberal interpretation. We have no difficulty whatever in saying that instruments of this sort ought to receive a liberal interpretation. By a liberal interpretation, we do not mean that the words should be forced out of their natural meaning; but simply that the words should receive a fair and reasonable interpretation, so as to attain the objects for which the instrument is designed and the purposes to which it is applied. We should never forget that letters of guaranty are commercial instruments, generally drawn up by merchants, in brief language, sometimes inartificial, and often loose. in their structure and form; and to construe the words of such instruments with a nice and technical care, would not only defeat the intention of the parties, but render them too unsafe a basis to rely on for extensive

credits." These cases and others to the same effect are cited with approval in the case of *Ringe v. Judson*, 24 N. Y., 64.

In that case the guaranty was as follows:

"MR. RINGE: SIR: I will be accountable to you that Mr. Butler will pay you for a credit on glass, paints, etc., which he may require in his business, to the extent of fifty dollars.                                    "D. C. JUDSON.

"Dated, Nov. 29th, 1858."

This was held to be a continuing guaranty, and that the limitation was as to the extent of the guarantor's liability, and not of the credit to be given. That case is directly in point, and appears to be a correct construction of the instrument. In our opinion, the guaranty in this case was a continuing one, and the limitation therein was as to the extent of the defendant's liability, and not as to the credit to be given to Newman. It follows that the judgment must be reversed, and the cause remanded for a new trial.

REVERSED AND REMANDED.