TURLINGTON W. HARVEY V. FIRST NATIONAL BANK OF
OMAHA.

FILED OCTOBER 20, 1898.   No. 8360.

1. Guaranty: TIME. The contract of guaranty herein in suit *held* to
be without limitation in its terms of the time of credit to be
given the principal debtor. (*Young v. Hibbs*, 5 Neb. 433.)

2. Notes: RENEWAL: PAYMENT. A note taken for a pre-existing debt
or as a renewal of another note is not a payment or discharge
of the debt, unless by express agreement it is accepted as such
payment or discharge.

3. ———: ———: ———: EVIDENCE. Whether it is payment or not
is to be determined from the intention of the parties as shown by
the acts, facts, and circumstances accompanying and attendant
upon the transaction in question.

4. Guaranty: EXTENSION OF TIME: CUSTOM AND USAGE. Whether ex-
tensions of time of payments effected by renewal notes were
within the scope of the unlimited credit as to time in terms of
a guaranty, *held* to be a matter to be determined from the evi-
dence relative to the usages and customs of business in such
transactions, also of the acts of the parties to and the facts and
circumstances of the transactions.

5. ———: ———: ———. A finding that such renewals were within
the contemplation of the parties at the time of the contract of
guaranty and within the time of credit authorized to be ac-
corded the principal debtor, *held* to be supported by the evidence.

6. ———: ———: LIABILITY OF GUARANTOR. If, with full knowledge
of facts which might work his discharge, and that such might
be their effect, a guarantor recognizes his liability as existent
and secures an extension of time for its payment, and also by
request secures further proceedings for collection by the cred-
itor against the principal debtor, he will be bound for its pay-
ment.

7. Trial to Court: ERRONEOUS ADMISSION OF EVIDENCE: HARMLESS
ERROR. In the trial of a case to a court without a jury, if incom-
petent evidence be admitted and considered, but the findings—
upon competent evidence and sustained thereby—demand the
judgment rendered as the only one which could follow, such
error, if committed, is without prejudice.

ERROR from the district court of Douglas county.
Tried below before BLAIR, J. *Affirmed.*

The opinion contains a statement of the case.

*Horton & Blackburn*, for plaintiff in error:

The indebtedness created under the guaranty was paid. (*Phœnix Ins. Co. v. Church*, 81 N. Y. 220; *Slaymaker v. Gundacker*, 10 S. & R. [Pa.] 75; *Bank of the United States v. Daniel*, 12 Pet. [U. S.] 34; *Cumber v. Wane*, 1 Smith, Leading Cas. 633; *Young v. Hibbs*, 5 Neb. 436; *Fisher v. Marvin*, 47 Barb. [N. Y.] 159.)

References to question as to extension: *Combe v. Woolf*, 8 Bing. [Eng.] 156; *Samuell v. Howarth*, 3 Mer. [Eng.] 272; *Chace v. Brooks*, 5 Cush. [Mass.] 43; *Tootle v. Elgutter*, 14 Neb. 158; *Manning v. Alger*, 52 N. W. Rep. [Ia.] 542.

References to question as to laches: *Talbot v. Gay*, 18 Pick. [Mass.] 534; *Newton Wagon Co. v. Diers*, 10 Neb. 284; *Oxford Bank v. Haynes*, 8 Pick. [Mass.] 423.

*Winfield S. Strawn*, contra.

References to questions as to construction of guaranty and as to liability of guarantor: *Watts v. Gantt*, 42 Neb. 869; *Tolerton v. McClure*, 45 Neb. 368; *Lihs v. Lihs*, 44 Neb. 143; *Monroe v. Reid*, 46 Neb. 316; *Merle v. Wells*, 2 Camp. [Eng.] 413; *Smith v. Dann*, 6 Hill [N. Y.] 543; *Union Bank v. Coster*, 3 N. Y. 203; *Lawrence v. McCalmont*, 2 How. [U. S.] 426; *Lafargue v. Harrison*, 70 Cal. 385; *Mason v. Pritchard*, 12 East [Eng.] 227; *Russell v. Wiggin*, 2 Story [U. S.] 213; *Drummond v. Prestman*, 12 Wheat. [U. S.] 518; *Davis v. Wells*, 104 U. S. 159; *Merchants Nat. Bank v. Hall*, 18 Hun [N. Y.] 180; *White's Bank v. Myles*, 73 N. Y. 340; *Bent v. Hartshorn*, 1 Met. [Mass.] 24; *Louisville Mfg. Co. v. Welch*, 10 How. [U. S.] 461; *Palmer v. Rice*, 36 Neb. 844; *Wilcox v. Draper*, 12 Neb. 138; *Lonsdale v. Lafayette Bank*, 18 O. 142; *Klosterman v. Olcott*, 25 Neb. 382; *Douglass v. Howland*, 24 Wend. [N. Y.] 35; *Case v. Howard*, 41 Ia. 479.

HARRISON, C. J.

It appears that Charles A. Harvey, who was engaged in business in the city of Omaha, desired to arrange with the bank, defendant in error herein, to make him loans of money to be used in the business at such times and in sums necessary to best forward his plans, efforts, and hopes in the enterprise. Turlington W. Harvey, the father of Charles A. Harvey, to help his son in his business venture and to aid him in obtaining accommodations in money matters of the bank, executed and delivered to it the following:

"For value received, I hereby guaranty to the First National Bank of Omaha, for one year from this date, the payment of any loan or discount by them to Charles A. Harvey, to the amount of seven thousand dollars ($7,000).

"Sept. 18, 1889.        (Signed)        T. W. HARVEY."

And on September 18, 1889, the bank loaned to the son $1,700, which transaction was evidenced by his note of that date in favor of the bank and due in ninety days. October 22, 1889, another loan was effected, evidenced by promissory note of the borrower to the bank as payee and due in ninety days from its date.

It was pleaded in the petition, relative to these loans and the notes to which we have just referred, as follows: "The two said sums of money, loaned as aforesaid and under the said guaranty, were never paid, but as the evidence of such loans of said sums, and for no other purpose, the said Charles A. Harvey made to the plaintiff his individual notes for each of the said sums, which said evidences of the said loans were from time to time replaced by other notes of the said Charles A. Harvey only, the last thereof, for the said loan of $1,700, bearing date of October 5, 1891; and the last thereof, for the said loan of $2,500, bearing date of November 4, 1891, at which time there was included the said loan of $2,500

the further sum of $200, also loaned to the said Charles A. Harvey, in consideration of, in reliance on, and within the time limited by the said written guaranty, making the last evidence of said loan a note in the sum of $2,700." There were further declarations in regard to a second guaranty and certain transactions thereunder, but there is no controversy here of and concerning it or them, and they will receive no further notice.

In the answer it was admitted that the guaranty was executed and delivered, the loans made, and the notes given, and it was stated:

"Said defendant further answering states that at the maturity of said above described note for $1,700, to-wit, December 20, 1889, said Charles A. Harvey gave to said plaintiff his personal check drawn on said plaintiff for said amount due, and that said plaintiff on said date discounted for said Charles A. Harvey one promissory note for $1,700, said Charles A. Harvey paying the interest on said note in advance, and that said plaintiff placed the amount of said note to the credit of said Charles A. Harvey; that at the maturity of said above described notes for $1,000 and $1,500 respectively, to-wit, January 25, 1890, said Charles A. Harvey gave to said plaintiff his personal checks drawn on said plaintiff for said amounts due, and that said plaintiff on said date discounted for said Charles A. Harvey one certain promissory note for $2,500, said Charles A. Harvey paying the interest on said note in advance, and that said plaintiff placed the amount of said note to the credit of said Charles A. Harvey. Said defendant further states that the delivery of said checks and the discount of said last mentioned notes on December 20, 1889, and January 25, 1890, respectively, were by said Charles A. Harvey given and by said plaintiff received in payment of said loans described in paragraphs three and four of this answer."

"(6.) Said defendant further answering admits the execution and delivery of said note of $1,700, bearing date October 5, 1891, and said note of $2,700, bearing date

of November 4, 1891, and states that both of said notes were by their terms made payable in ninety days from their respective dates and were given and received in payment of any and all loans then due and remaining unpaid made by said plaintiff to said Charles A. Harvey. Said defendant further states that in consideration of the execution and delivery of said notes all evidences of indebtedness for all loans then due were by said plaintiff surrendered and delivered up to said Charles A. Harvey. Said defendant further states that said note for $2,700 was by said Charles A. Harvey given and by said plaintiff received in payment of a note for the sum of $2,500 dated August 3, 1891, and a loan made by said plaintiff to said Charles A. Harvey after the expiration of said guaranty. Said defendant further states that said $2,700 note included, also, three months' interest in advance from said November 4, 1891, on said sums included in said note. Said defendant further states that in consideration of said plaintiff's extending the time of payment of the amounts included in said last mentioned notes for $1,700 and $2,700, respectively, for ninety days from their respective dates said Charles A. Harvey executed and delivered said notes, and also paid to said plaintiff three months' interest in advance on said note for $1,700 and included interest in advance, as aforesaid, on said note for $2,700.

"(7.) Said defendant further answering states that after the maturity of said notes of $1,700 and $2,700, respectively, said plaintiff, by the consideration of the court, duly recovered judgment thereon against said Charles A. Harvey.

"(8.) Said defendant further answering admits that the notes given for any loans made during the continuance of said guaranty were from time to time replaced by other notes, and states that when each new note was given the old one was surrendered and delivered up to said Charles A. Harvey and the payment of the amount represented by said new note was extended for a definite

period in consideration of payments made said plaintiff by said Charles A. Harvey and the execution and delivery of said new notes. Said defendant further states that when each of said notes became due said Charles A. Harvey gave to said plaintiff for the amount of such note his personal check drawn on said plaintiff, and also signed a new note, which was discounted by said plaintiff and the amount thereof placed to the credit of said Charles A. Harvey by said plaintiff.

"(9.) Said defendant further states that all of the said extensions and final extensions of the payment of said sums of $1,700 and $2,700 ninety days from October 5, 1891, and November 4, 1891, respectively, were made by said plaintiff for a valuable consideration moving from said Charles A. Harvey to said plaintiff and without the knowledge or consent of said defendant.

"(10.) Further answering said defendant states that the first knowledge he had that any loans made by said plaintiff to said Charles A. Harvey had not been paid at their maturity was some time subsequent to February 1, 1892, when he received notice by letter from said plaintiff. Said defendant further states that during the continuance of said guaranty, and for more than one year from its expiration, said Charles A. Harvey was solvent, was a resident of the city of Omaha, said county, and had property in said county subject to execution; that when said defendant first received notice of the non-payment of certain loans made by said plaintiff to said Charles A. Harvey said Charles A. Harvey was insolvent and had no property whatever subject to execution."

The reply, to the extent we need notice it, was as follows:

"Alleges that upon the failure of said Charles A. Harvey to pay the said sums in the petition mentioned, loaned to him under defendant's said express guaranty, plaintiff informed defendant of that fact and demanded payment by him of the said sums and interest. And thereupon defendant verbally requested that plaintiff

would, in order to save defendant upon his said express guaranty, endeavor to get said sums of money from the said Charles A. Harvey during the then six months, and verbally proposed and agreed that if within the said time the said Charles A. Harvey had not paid the same, he, the defendant, would pay to the plaintiff the said sums and interest; that plaintiff then and there relying on the said promise agreed to said request, delayed to require payment of said sums from defendant during said time, and used all reasonable means to collect said sums from said Charles A. Harvey, but without any success."

"Third. That to indemnify himself against liability or loss by reason of making and giving to plaintiff the contracts of guaranty in the petition set out, defendant demanded of and received from said Charles A. Harvey, who is the son of the defendant, the conveyance to defendant of a large amount of property of the said Charles A. Harvey, which plaintiff cannot fully set forth and describe, but among other things the following: Twenty-five (25) lots or parcels of real estate 'on the west side,' in the city of Chicago, Cook county, Illinois, of the value of eight hundred dollars ($800) per lot; and defendant still held the title and ownership of the said realty, when called upon to pay the loans guarantied by him as stated in the petition and at the time when he made the verbal promise of payment as stated in this reply.

"Fourth. That the taking of the notes merely as the evidence of the amounts loaned to said Charles A. Harvey under the said guaranty, and the renewal of said evidences of indebtedness on account of the said original loans under said guaranty, were in accordance with established bank usage and banking custom, which obtains in such matters in banking business generally."

There was a trial of the issues to the court without a jury, and in response to a demand on the part of plaintiff in error for findings of fact and conclusions of law, the court made the following findings of fact:

"1. That of date September 18, 1889, the defendant

made and delivered to the plaintiff the written guaranty set out in the first count of the petition herein.

"2. That the Charles A. Harvey, named therein, was the son of the defendant, and defendant's object in giving said guaranty was to secure for his said son a continuing credit to enable him to carry on business in Omaha, Nebraska.

"3. That in reliance on said letter of guaranty or credit plaintiff loaned to said Charles A. Harvey the two several sums of money sued on, to-wit, $1,700 on September 18, 1889, and $2,500 on October 22, of the same year.

"4. That during the continuance of the said guaranty the defendant knew that the money was being furnished thereunder to his said son, but was not acquainted with the details thereof.

"5. That said sums of money so loaned have not been paid in whole or in part, but are still owing and due.

"6. That as evidence of said loans notes were made by said Charles A. Harvey to plaintiff, which notes were, as stated in the petition, replaced from time to time by new notes signed by the said Charles A. Harvey, but evidenced only the original loans.

"7. That in the last of the notes evidencing the original loan of and for $2,500 made October 22, 1889, there was included the sum of $149.92, the same being the amount of an overdraft of his account by said Charles A. Harvey, after the expiration of the time limited by the said guaranty within which loans could be made to said Charles so as to charge defendant with the payment thereof.

"8. That the notes made by the said Charles A. Harvey from time to time as evidence of the said loans made in the year 1889 were not, either, any, or all of them, taken or received in, for, or as payment of said loans of money, either in whole or in part, but were given and received only as the renewed evidences of the original loans and for no other purpose,

"9. That the contract contained in the said letter of credit of September 18, 1889, was never varied by any other contract or agreement, and there was no restriction, reservation, or limitation upon the dealings of the said Charles A. Harvey with plaintiff thereunder other than that the actual loans of money should be made to him within one year from said date, and should not exceed the sum of $7,000.

"10. That there is due to the plaintiff upon and for the loans so made to said Charles A. Harvey, in the year 1889, the sum of $5,537.50, and said sum should draw ten per cent interest from February 4, 1895, that being the first day of the present term of this court.

"11. That with full knowledge at the time of the promise hereinafter in the paragraph mentioned, that said two loans had been made to his said son, at the times hereinbefore stated, and of the facts following upon the making of said loans, and of the manner in which the business with plaintiff had been conducted by his said son, defendant requested to press said Charles A. Harvey for payment of the loans of money so guarantied by defendant, in order, if possible, to save the defendant from the loss which he anticipated he would sustain by being compelled to pay the same as his said son's guarantor therefor, and requested plaintiff to wait upon him, defendant, for the period of six months while so doing, and requested that if said loans were not paid by that time to inform him, the defendant; that by reason of said request and promise plaintiff granted said delay, pressed the said Charles A. Harvey for payment of said loans, brought suit against him therefor, took judgment of this court therefor, issued execution thereon, and upon return thereof took due proceedings in aid of said execution; examined said defendant in this court, had a due minute of his examination thereunder made in full by the short-hand reporter of this court, had the same copied, and duly certified by the presiding judge, filed with the clerk and made of record in the case, all as provided by law

and in compliance with the requirements of section 547 of the Code of Civil Procedure.

"12. That to indemnify defendant against loss for making the said written guaranties sued on herein, said Charles A. Harvey, on defendant's request, made to the defendant a deed for twenty-five lots in the city of Chicago, Cook county, Illinois, the property of said Charles A. Harvey, which said lots were at the time of the reasonable value of $20,000; which said realty has never been reconveyed by defendant, either in whole or in part.
\*   \*   \*

"CONCLUSIONS OF LAW.

"1. That the rights of the parties are to be determined by and from the language and express terms of the letter of credit of date September 18, 1889; and that by the express terms of said letter the maker thereof became and is liable for the money loaned by plaintiff to his said son within one year from its date, so that said loans did not exceed the sum of $7,000.

"2. That subject to the conditions that the money should be actually loaned within one year from September 18, 1889, and should not exceed the sum of $7,000 the defendant's said undertaking to pay the same was absolute.

"3. That the period of one year provided in said guaranty was a limitation as to the time within which the money was to be loaned to said Charles A. Harvey, and not a limitation as to the time for which credit should be given him for the loan of said money.

"4. That neither notice by plaintiff of acceptance of the guaranty sued on, or of the lending of the money in pursuance thereof, was necessary, either as a matter of law or by any term of the contract in writing herein sued on; but that it was the business of the guarantor to inquire of his son and learn what was being done under said guaranty.

"5. That as said guaranty was given for the promotion of the guarantor's son and to assist him in life, then, first

restricting its construction of the fair and reasonable interpretation of the words used in the writing, said instrument should be so construed as to attain the object for which it was given, and not in a technical manner, and in case of reasonable doubt as to their meaning the words are to be taken most strongly against the person giving the guaranty, and he should be held to what appears to be the full extent of his contract or agreement.

"6. That the various notes made by the said Charles A. Harvey did not pay or extinguish the debts made by the actual loan to him of money within the year from September 18, 1889, there not having been any express agreement that the giving and taking of the same should have such effect; but the changes or renewals of the said notes evidencing said loans were at most only a change of the evidences of the said prior actual loans of money made to said Charles under the guaranty.

"7. That the said undertaking of guaranty was burdened with no conditions, restrictions, or limitations save those which the guarantor chose to express and did express therein; but as made and delivered it left to the borrower thereunder, and to the bank, all the details of the business, the manner of evidencing said loans of money, the times for which said evidences should run, renewals thereof, so as to comply with bank usages in that respect; the length of the credit to be given, the rate of interest to be paid (within the legal rate), and every other manner and thing connected with the loans, unless restricted in the guaranty; and, not having limited the acts of his said son and plaintiff to one transaction, or to any specific number of transactions under said guaranty, the replacing of the evidences of the loans from time to time with other evidences thereof was immaterial, so that the actual loans of money themselves were made within the prescribed limit of one year, and did not exceed the sum of $7,000.

"8. That the indemnity taken by the defendant from his said son for making the guaranty sued on prevented

defendant's release, and fully held him for the money actually loaned, under the circumstances of this case."

Judgment was rendered, to reverse which is the object of the error proceeding to this court.

The instrument of guaranty was a limited one as to the amount to be loaned and the time within which the money was to be furnished, but was unlimited in respect to the time or length of credit to be given. Such an interpretation was given to a similarly worded guaranty in respect to time of credit in *Tootle v. Elgutter*, 14 Neb. 158. All matters of detail, how the loans were to be evidenced, whether notes taken, etc., were not mentioned. On this subject there appears some significant indications in the testimony of the guarantor as follows:

Q. Did you have any knowledge during the year 1889 of any loans made by the First National Bank of Omaha to Charles A. Harvey? (Objected to, as immaterial and irrelevant. Overruled, and plaintiff excepts.)

A. I had no specific knowledge of any particular loans as to amounts or time or anything of that sort.

Q. Did you have any knowledge during the year 1889 of any notes discounted by the bank for Charles A. Harvey? (Objected to, as irrelevant and immaterial. Overruled, and excepts.)

A. I had a general knowledge that he was borrowing money there, but I did not know anything about the amounts or anything about that. I didn't know anything about the details of the business.

From this it would seem that he understood that the matter of time, of credit, and other details were to be arranged between the bank and the son and were in fact being so adjusted. It may be said that the time of credit to be accorded was left by the instrument delivered to be fixed by the immediate parties to the transaction of loan and might have been forty, fifty, or one hundred years, but we incline to the view that it must in any such an affair be a reasonable time within the purview of the purposes to be accomplished, as exemplified by the

facts and circumstances which surround and accompany the principal matters of the occurrences,—the loans. (*Lehigh Coal & Iron Co. v. Scallen*, 63 N. W. Rep. [Minn.] 245.)

So much we have devoted to what we considered the proper elucidation of some of the points of the case preliminary and subsidiary to the main subjects of argument. It was shown that when the debts herein involved were first contracted by Charles A. Harvey, promissory notes were by him executed, and, as their evidences, delivered to the bank, due in ninety days from date, and at or near the close of the stated times the notes had to run new notes were given for the same amounts and the old notes were taken up. The exact mode of each transaction is stated more in detail in the excerpt from the pleading of the plaintiff in error hereinbefore made. It is urged for plaintiff in error that each of the changes thus effected constituted a payment or extinguishment of the debt evidenced by the note taken up. The general rule on this subject was stated in the opinion in the case of *Young v. Hibbs*, 5 Neb. 433, to be that "A note taken for a pre-existing debt will not discharge the original cause of action, unless it is by express agreement taken in payment of such prior debt." "It is a general rule that if one indebted to another by note gives another note to the same person for the same sum, without any new consideration, the second note shall not be deemed a satisfaction of the first unless so intended or accepted by the creditor." (*Hart v. Boller*, 15 S. & R. [Pa.] 162.) Counsel for plaintiff in error argue that such transactions as occurred between the bank and Charles A. Harvey relative to his indebtedness and notes were not within the reason or the letter of the general rule, and refer to the note to *Cumber v. Wane*, 1 Smith's Leading Cases, 659, wherein it is said: "Where the transaction is the renewal of notes in whole or in part at bank, the general course of business and undertaking of merchants rather implies that the new note is a satisfaction of the old; that

the transaction is a new discount and repayment of the former note. (*Slaymaker v. Gundlacker*, 10 S. & R. [Pa.] 75; *Bank U. S. v. Daniel*, 12 Pet. [U. S.] 34)," to which may be added *Phœnix Ins. Co. v. Church*, 81 N. Y. 218; but in the same note it is also stated in direct connection: "Still, even here, the decision of the court is regulated exclusively by the intention of the parties and the justice of the case." (*Bank of Commonwealth v. Letcher*, 3 J. J. Marshall [Ky.] 195, 1 Dana [Ky.] 82.) It will no doubt have been noticed that the main quotation goes no further than to say that the general course of business, rather implies certain results from the transaction. We take it that there was not meant an unavoidable or uncontradictable conclusion, but one governable by the ascertainable intention of the parties. The evidence in the case at bar was to the effect that the father desired the bank to allow to his son what may be denominated a "running credit"—(it is true it may often run beyond what is pleasant when the day of payment arrives, but this cannot avail to avoid the payment),—such accommodations within the limit as to amount fixed by the guaranty as would enable the son, whom the father wished to assist, to proceed with and operate his business venture in the manner he judged best calculated to accomplish its projected ultimate ends; and these were of the facts known to all the parties and which were attendant upon the transactions in question. That such evidence is competent and may be received in a case similar to the present on the subject of the intention of the parties see *Lehigh Coal & Iron Co. v. Scallen, supra; White's Bank v. Myles*, 73 N. Y. 335; *Bent v. Hartshorn*, 1 Met. [Mass.] 24; *Tootle v. Elgutter, supra*. For the plaintiff in error we are referred to the decision in the case of *Fisher v. Marvin*, 47 Barb. [N. Y.] 159, in which it was held: "The discounting of a new note and the application of the proceeds realized from it to the payment of a former note extinguishes the old debt and creates a new one. Such a transaction is not a mere

change of securities,—the taking of the new note in the place of the old one,—but a discount and a payment of money upon the strength of the new security by means of which the old obligation is discharged, given up, and surrendered so as to render it ineffective for any purpose. Under such circumstances the contract does not relate back to the time when the first note was discounted, but the old note having been paid and taken up the debt will be deemed to have been contracted when the new note was given." The doctrine just quoted was overruled in *Jagger Iron Co. v. Walker*, reported in 76 N. Y. 521, wherein the rule was stated as follows: "The taking, by a creditor, of the debtor's note for an existing indebtedness does not merge or extinguish the indebtedness; the note is simply evidence of the debt, and its operation is only to extend the time of payment. When default is made in payment, the creditor may sue upon the original demand and bring the note into court to be delivered upon trial. And so successive renewal notes are simply extensions from date to date of the time of payment. This rule is not changed by the facts that the first of a series of notes so given was indorsed and procured to be discounted by the creditor, and the succeeding ones were each discounted to raise money to take up the preceding one. No note in the series is a payment of the preceding one, unless there has been a discharge of the creditor as indorser, or unless by the transaction he has obtained a claim against another party." That the latter overruled the former decision did not destroy the force of the reasoning employed in the former, but we think the reasons of the latter the more cogent; hence approve them. All the facts considered we are satisfied that the trial court was right in its findings; that the transactions in question were changes or renewals of the evidences of indebtedness and not payments of the old notes which were taken up when new ones were given.

It is insisted in behalf of plaintiff in error that the extensions of time after one time of credit fixed had ex-

pired, viz., the first ninety days, operated the release of the guarantor. Here again we are satisfied that where the instrument of guaranty is silent in relation to the credit to be granted, the facts and circumstances which were contemporaneous with the inception of the transaction, and the motives of the parties which prompted the actions as well as usages and customs usually attendant upon and elemental of like business matters, may be looked to in the consideration and determination of the relative positions which the parties assumed by their acts and conduct. Within this view and the evidence adduced herein it is clear that the finding of the trial court that the extensions given were within the contemplation of the parties at the time the guaranty was executed, and became of force, was amply sustained, and will not be disturbed.

It is also contended that the bank released the guarantor by laches, or neglect to notify him of the failure of the principal debtor to make payment, and that in the meantime the latter had become insolvent, to the damage of the guarantor. Of the rules of law governable of such a question we need not inquire. Regardless of their point, the judgment was correct. The trial court determined that, when notified of the default of his principal, the guarantor, with full knowledge of all the facts, asked and obtained an extension of time to himself, and in the meantime a further effort by the creditor to collect of the principal debtor, this was sufficient to bind him. (Brandt, Suretyship & Guaranty sec. 119.) This finding of the court had ample support in the evidence and must be given effect.

On the offer of defendant in error evidence was received from which it was sought to make it appear that an effort to take a deposition for the bank had failed by reason of some efforts to cause such failure put forth on behalf of the plaintiff in error; and also connected with this there was offered and admitted the testimony of the party whose deposition had been purposed but not taken,

which testimony had been given in supplementary proceedings in aid of execution in a suit against the principal debtor herein to recover the debt which in this action it is sought to obtain from the guarantor, and which strongly tended to establish that Charles A. Harvey had conveyed certain property to his father to indemnify him for becoming liable as guarantor in the transactions with the bank, and that such property was full and ample indemnity. Of this it is complained that it was all incompetent, and its reception an error. It is true that the trial court made a finding that the indemnity had been furnished, and it is further true that the testimony of the admission of which the complaint is made must have been of the basis for such finding, but whether error or not to receive the testimony to which we have just referred, cannot change the disposition of the cause here, for with a finding of the recognition by the guarantor of the indebtedness and supported by sufficient competent evidence no other judgment than the one rendered could have followed; hence, if there was an erroneous admission and consideration of testimony in the particular urged, it could not have been prejudicial and would not call for a reversal of the judgment. The judgment of the district court is

AFFIRMED.