NEBRASKA HARDWARE COMPANY, APPELLANT, V. HUMPHREY HARDWARE COMPANY ET AL., APPELLEES.

FILED MAY 21, 1908.   No. 14,995.

1. Contract: CONSTRUCTION. In interpreting a written contract, the meaning of which is in doubt and dispute, the court, in order to determine its meaning, will consider all the facts and circumstances leading up to and attending its execution, and will consider the relations of the parties, the nature and situation of the subject matter, and the apparent purpose of making the contract. The court will, so far as possible, put itself in the place of the parties and interpret the contract in the light of the circumstances surrounding them at the time it was made and the object which they had in view.

2. ————: ————. As a general rule, where two written instruments

relate to the same subject matter, one signed as a condition to the signing of the other, and both signed at about the same time, they will be construed together as constituting a single writing.

3. Appeal: HARMLESS ERROR. This court will not consider assignments of error which are not prejudicial to the party making the assignment.

4. ———: CROSS-APPEAL. Parties to an action desiring to effect a cross-appeal in this court are required to file a brief of assignments of error within the time limited by statute for appealing.

APPEAL from the district court for Lancaster county: LINCOLN FROST, JUDGE. *Affirmed.*

*Burkett, Wilson & Brown,* for appellant.

*Rose & Comstock, contra.*

GOOD, C.

In 1902 the Humphrey Hardware Company, hereafter called the "Humphrey Company," was a Nebraska corporation having a capital stock of $30,000, divided into 300 shares of $100 each. Its capital stock was owned and held as follows: Sarah M. Humphrey, 100 shares; Cora H. Wheeler, 99 shares; Myron E. Wheeler, her husband, 1 share; Julia H. Herrick, 99 shares; and Charles M. Herrick, her husband, 1 share. Sarah M. Humphrey is the mother of Mrs. Wheeler and Mrs. Herrick. It will be observed that one-third of the capital stock was owned by Mrs. Humphrey, one-third by Mrs. Wheeler and her husband, and one-third by Mrs. Herrick and her husband. Mrs. Humphrey was the president, and Myron E. Wheeler was the secretary and treasurer, of the company. The Herricks were not on friendly terms with the other shareholders. Mrs. Herrick transferred her shares to one Chapman, to whom a new certificate of stock was issued. In 1903 Chapman assigned his certificate to Mrs. Herrick, but the Humphrey company refused to issue a new certificate to her on the ground that it had a lien upon the shares of stock. In April, 1903, Mrs. Herrick brought

suit against the Humphrey company for the conversion of these 99 shares of capital stock. Within a few days after the suit was brought the Humphrey company, apparently finding that it did not have a valid lien upon the stock, tendered to Mrs. Herrick a certificate of stock for the 99 shares, which she refused to accept. The action of Mrs. Herrick for conversion was still pending and undisposed of in September, 1905, when the Patterson-Crosby Hardware Company, hereafter called the "Patterson company," began negotiations for the purchase of the Humphrey company and its assets. These negotiations were carried on through one Webster, a broker, W. E. Jakway, vice-president of the Patterson company, acting for it, and Myron E. Wheeler, representing the interests held by Mrs. Humphrey, himself and his wife. At the inception of the negotiations Jakway was informed that Mrs. Humphrey and the Wheelers would not deal with him unless he first procured the Herrick interests, including a dismissal or settlement of the action for conversion. On September 14, 1905, Jakway obtained an option from the Herricks for their interests in the Humphrey company, including a dismissal of the action for conversion, and so informed Mr. Wheeler. Negotiations then proceeded with Wheeler for the other interests in the Humphrey company. Jakway prepared and submitted to Wheeler a proposed contract, dated September 19, 1905, to which Wheeler objected, claiming that it did not correctly set forth the terms of their agreement. Wheeler refused to sign the contract until Jakway would first sign an additional or supplemental agreement, which Wheeler prepared, dated September 20, 1905. This was accepted by the Patterson company, and then Mrs. Humphrey and the Wheelers signed the contract prepared by Jakway. The two instruments are as follows:

"This agreement made and entered into this 19th day of September, 1905, by and between the Humphrey Hardware Company, a corporation of Lincoln, Nebraska, Cora

E. Wheeler, Myron E. Wheeler, and Sarah M. Humphrey, parties of the first part, and the Patterson-Crosby Hardware Company and its assigns, party of the second part, witnesseth: That the parties of the first part agree to sell, assign and transfer to the party of the second part all of their interest in the Humphrey Hardware Company, and all of their interest in the capital stock thereof, for the sum of $10,000, payable as follows: $500 cash in hand, the receipt whereof is hereby acknowledged by the party of the first part; and the balance to be paid upon the delivery by the first parties to the second party of the certificates of stock in the Humphrey Hardware Company owned and held by the first parties, representing two-thirds of the capital stock of the said company, together with the records, papers, notes, books of account, and all other property of the said Humphrey Hardware Company, and possession of the store rooms now used and occupied by the said Humphrey Hardware Company. It is further agreed that the second party shall and it hereby assumes and agrees to pay as a part of the purchase price as above set forth the debts and liabilities of the Humphrey Hardware Company in any amount up to $8,000; but in no case shall the second party be held liable for the debts of the said Humphrey Hardware Company in any amount which such debts shall exceed the sum of $8,000. It is further agreed that the parties of the first part shall secure for and execute to the parties of the second part a written lease for the period of ten years from this date for the property now occupied by the Humphrey Hardware Company, to wit: Lots eleven (11) and twelve (12), block forty-four (44), in the city of Lincoln, Lancaster county, Nebraska, at the annual rental of $2,500, payable monthly in advance. It is further agreed that the action now pending, wherein Cora H. Wheeler is plaintiff and the Humphrey Hardware Company is defendant, and the action now pending, wherein Julia H. Herrick is plaintiff and the Humphrey Hardware Company is defendant, are each fully settled, and

the causes of action in said actions in favor of either party are fully settled, and said actions shall be dismissed at once, and all claims and causes or actions in favor of any owner of the property and stock of. the Humphrey Hardware Company against any other owner are hereby satisfied, settled and discharged."

"Lincoln, Neb., Sept. 20, 1905. All under $8,000 indebtedness owing by the stock transferred by Mrs. Sarah M. Humphrey and Cora H. Wheeler shall be paid by the purchaser to Myron E. Wheeler, representative of the two-thirds interest transferred by him as such representative of Sarah M. Humphrey and Cora H. Wheeler. Check for full amount for stock as heretofore agreed upon shall be paid to said Wheeler at time of transfer of stock. Accepted. Patterson-Crosby Hdw. Co."

It is conceded that the consideration was $18,000, instead of $10,000, as stated in the contract. On the 22d day of September the officers of the Humphrey company resigned, and the capital stock owned by Mrs. Humphrey and the Wheelers was assigned to the Patterson company, which then took possession of all of the assets of the Humphrey company. Eight thousand dollars of the consideration were retained by the Patterson company for the payment of obligations of the Humphrey company. It was arranged that the bills were to be "O. K'd" by Wheeler before being paid. About the 27th of September the Nebraska Hardware Company, hereafter called the Nebraska company, was organized and succeeded to and took over all the business and assets of the Patterson company, including the business and assets it had acquired from the Humphrey company. The Patterson company and its successor, the Nebraska company, paid something like $5,000 of the obligations of the Humphrey company, when it was discovered that the liabilities of the Humphrey company were considerably in excess of $8,000. Thereupon, the Nebraska company refused to make further payments of the liabilities of the Humphrey company, and brought. this action against the Humphrey

Hardware Company,. the Patterson-Crosby Hardware
Company, Mrs. Humphrey, the Wheelers, and the unpaid
creditors of the Humphrey company. Plaintiff in its
petition set out the making of the original contract pre-
pared by Jakway, alleged that it had paid certain obli-
gations of the Humphrey company, and that the re-
mainder of the $8,000 was insufficient to discharge the
obligations of the Humphrey company, and asked for a
reformation of the contract, praying that the unpaid bal-
ance of the $8,000 be ratably distributed to the unpaid
creditors of the Humphrey company, and that the plain-
tiff and the Patterson company be relieved and discharged
from any further liability to any of the parties to the
action. Mrs. Humphrey and the Wheelers answered, ad-
mitting the making of the original contract, and setting
up the supplemental and additional agreement, and asked
to have the two instruments interpreted by the court so
as to hold them liable for only two-thirds of the debts
of the Humphrey company, and if the court did not so
interpret it, that the contract be reformed so as to ex-
press the meaning contended for by them. Some adjust-
ment was made, whereby the creditors of the Humphrey
company were eliminated from the action. Upon the trial
the court found the debts existing at the time of the sale
from Mrs. Humphrey and the Wheelers to the Patterson
company to be $10,729.60. It denied the prayer of both
parties for a reformation of the contract, and interpreted
the contract to mean that it was a guaranty that the in-
debtedness of the Humphrey company did not exceed
$8,000, and that Mrs. Humphrey and the Wheelers were
liable for two-thirds of the debts up to $8,000, and for all
in excess thereof, and entered a decree in favor of the
Patterson company and the plaintiff Nebraska company
against Mrs. Humphrey and the Wheelers for the sum
of $62.94. The Nebraska company and the Patterson com-
pany have appealed.

The precise question for determination is: Does the
contract require Mrs. Humphrey and the Wheelers to pay

all the debts of the Humphrey company existing at the
time of the transaction, or does it require the Patterson
company, as between the parties, to pay one-third of all
the debts of the Humphrey company to the amount of
$8,000?

"In interpreting a writing, the court, in order to de-
termine its meaning, will consider all the facts and cir-
cumstances attending its execution. Among the circum-
stances so considered are the relations of the parties, the
nature and situation of the subject matter, and the ap-
parent purpose of making the instrument or contract in
question. * * * It is but another statement of the
same rule to say, as is frequently done, that the court
will, if necessary, put itself in the place of the parties
and read the instrument in the light of the circumstances
surrounding them at the time it was made and of the
objects which they evidently had in view." 17 Am. & Eng.
Ency. Law, 21-23. Substantially the same rule has been
adopted by this court in *Tootle & Maule v. Elgutter,* 14
Neb. 158, and by the supreme court of the United States
in *Merriam v. United States,* 107 U. S. 441, and in *Nash
v. Towne,* 5 Wall. (U. S.) 689. Giving effect to this rule,
it is proper to ascertain, if possible, what relationship
existed between the Patterson company and Mrs. Hum-
phrey and the Wheelers at the time of their dealings; in
other words, did they deal upon the theory and under-
standing that the Patterson company was the owner of
a one-third interest in the Humphrey company?

The record discloses that Wheeler would not deal with
Jakway, as the representative of the Patterson company,
until it had acquired the interests of the Herricks. There-
upon, an option was secured upon the Herrick interests.
The option contract contained the following language:
"We (the Herricks) will for five thousand eight hundred
seventy-five dollars ($5,875) paid in cash on or before
12 o'clock, noon, of September 30, 1905, assign to said
W. E. Jakway all our interest in the suit of Julia H.
Herrick against the Humphrey Hardware Company, now

pending in the district court for Lancaster county, Nebraska, and we will pay all the unpaid costs in said suit, and we will further assign to said W. E. Jakway the certificate representing ten thousand dollars ($10,000) face value of the capital stock of said Humphrey Hardware Company, as a part of the consideration for said sale." It thus appears that Jakway, acting for the Patterson company, was to become the owner of the capital stock held by the Herricks. After this option had been obtained, and before the contract was made with Mrs. Humphrey and the Wheelers, Jakway, or his attorney in Jakway's presence, stated that Jakway was the owner of a one-third interest in the bills receivable of the Humphrey company, including the bank account. Also, prior to the making of the contract, Jakway made a written proposition, which contained the following language: "Our offer is $10,000 for the capital stock of Hump. Hdw. Co. you hold or ⅔ int." Mr. Jakway had taken an assignment of all of the Herrick stock, including the one share of Mr. Herrick's stock, which was not in litigation, and, while he claims that he simply took an assignment of Mrs. Herrick's action for conversion against the Humphrey company, it is evident that he did not treat with Wheeler on the theory that he had a claim against the Humphrey company which should be liquidated, but rather on the theory that he was the owner of one-third of the capital stock. The consideration to Mrs. Humphrey and the Wheelers was not to be paid until the capital stock owned by them was assigned to the Patterson company. It thus appears plain that the two parties dealt with each other upon the theory and understanding that the Patterson company was the owner of a one-third interest, and Mrs. Humphrey and the Wheelers were the owners of the other two-thirds interest, in the Humphrey company. It would be somewhat out of the ordinary for one who held a one-third interest in a corporation to claim to buy the whole of the assets from the other stockholders, who owned but two-thirds of the assets. If the Patterson company was

only buying the stock of merchandise, it would be very strange that it should buy the bank account; in other words, buy money. This is not the usual course of dealing, and we cannot account for the transfer of the bank account belonging to the Humphrey company, except upon the theory that the Patterson company had become the owner of the capital stock of the Humphrey company, and thereby the owner of all its assets, including the bank account. Again, if the Patterson company was buying only the stock of merchandise of the Humphrey company, it would not be concerned about the payment of the Humphrey company's debts, and it would not be likely to burden itself with the duty of looking after and adjusting the obligations of another corporation, which required a third party to "O. K." the bills. The only rational theory upon which it would do this is that it was for its own protection, and it would require protection only upon the theory that it had become the owner of the capital stock of the Humphrey company, and thereby liable for its debts. The conclusion, to our minds, is irresistible that in the transaction the Patterson company was simply buying two-thirds of the capital stock from Mrs. Humphrey and the Wheelers.

Accepting this conclusion, it would follow that Mrs. Humphrey and the Wheelers, in transferring a two-thirds interest in the capital stock, would naturally provide for the liquidation of two-thirds of the obligations of the company. If the Humphrey company was to be wound up and to go out of business, its assets would be required, first, for the payment of its debts; the remaining sum to be ratably distributed among the shareholders. The effect would be practically to charge each shareholder with his proportion of the obligations. This would mean that Mrs. Humphrey and the Wheelers would practically be liable for two-thirds, and the Patterson company for one-third, of the debts of the Humphrey company. It would be a very unusual thing for one joint owner by a contract to

consent to pay all of the obligations of the several joint owners.

With these observations in view, let us approach the written contract. And, first, what effect shall be given to the supplemental memorandum dated September 20, 1905? The trial court treated it as a part of the original contract, and construed the two together as constituting the entire contract. We think it is a general rule that, when two or more written instruments have been signed at practically the same time, relating to the same subject matter and the same transaction, that they should be construed together as constituting a single writing. In this case, Wheeler would not assent to the first contract until the Patterson company accepted the supplemental memorandum. When the Patterson company accepted the supplemental memorandum, then Wheeler assented to the original contract. The minds met. The two instruments constituted the contract. The record shows that Wheeler and one other witness testified that Jakway was specifically informed that the $8,000 to be retained was for the payment of two-thirds of the liabilities of the Humphrey company. This, however, is denied by Jakway. There is also evidence tending to show that Jakway ascertained, prior to the making of the contract, that the liabilities of the Humphrey company considerably exceeded $8,000. The instrument dated September 19 is silent as to whether or not the $8,000 was for the payment of all the debts of the Humphrey company, or only two-thirds of them. But the supplemental portion of the contract, dated September 20, providing that "all under $8,000 indebtedness *owing by the stock transferred* by Mrs. Sarah M. Humphrey and Cora H. Wheeler shall be paid by the purchaser to Myron E. Wheeler, representative of the two-thirds interest," cannot be given any effect at all, and would be entirely devoid of any meaning, it appears to us, unless it be interpreted to mean that the $8,000, or so much of it as was necessary, should be used to discharge two-thirds of the liabilities of the Humphrey company.

The trial court held that the original contract was a guaranty that the indebtedness of the Humphrey company did not exceed $8,000, and held that the Patterson company was liable for only one-third of the debts up to the limit of $8,000, or that it was liable only for $2,666.66. Whether or not this holding is right it is not necessary to consider, because it was beneficial, instead of prejudicial, to the appellants, and they cannot therefore complain of it.

Appellant complains in its petition and cross-petition that Mrs. Humphrey and Mr. Wheeler fraudulently procured payment of claims against the Humphrey company in their favor to the amount of $900, and asked to have this amount charged to them. The evidence indicates quite clearly to us that these claims were proper and legitimate claims against the Humphrey company. And, even if they were fraudulently paid, that would not be material in this case, because the Patterson company is held liable for only one-third of the debts up to $8,000, and it is conceded that the debts existing against the Humphrey company, exclusive of the claims of Mrs. Humphrey and Mr. Wheeler, are in excess of $8,000, and therefore the payment of these claims added no burden to the Patterson company.

Mrs. Humphrey and the Wheelers attempted to perfect a cross-appeal, but their cross-appeal was, on motion of the plaintiff, stricken from the files. They now ask leave to reinstate their cross-appeal. The record shows that Mrs. Humphrey and the Wheelers did not file any cross-assignment of errors or any brief of errors until more than 13 months after the judgment was entered in the district court, and more than 8 months after the transcript was filed in this court. Rule 35 of this court provides: "Coparties of appellants may join in the appeal or take cross-appeal, or other appellees may take cross-appeal by filing with the clerk of this court a typewritten or printed brief which shall contain only the errors complained of, the court from which the appeal is taken, the

date of the judgment appealed from, and the names of the parties plaintiff and defendant, respectively. Such brief must be filed within 30 days after service of notice of appeal upon them, or within the same time after having waived such service, or within the time limited by statute for appealing." The typewritten or printed brief, which shall contain only the errors complained of, was not filed within 30 days after the service of notice of appeal upon Mrs. Humphrey and the Wheelers, nor within the time limited by statute for appealing. The failure of Mrs. Humphrey and the Wheelers to comply with the provisions of the statute and the rules of the court deprives them of the right to now perfect their cross-appeal, and the motion to reinstate the cross-appeal should be overruled.

We therefore recommend that the motion to reinstate the cross-appeal be overruled, and that the judgment of the district court be affirmed.

DUFFIE, C., concurs.

By the Court: For the reasons given in the foregoing opinion, the motion to reinstate the cross-appeal is overruled, and the judgment of the district court is

AFFIRMED.