ROY CLOUGH, ADMINISTRATOR, APPELLEE, V. STANDARD OIL COMPANY, APPELLANT.

FILED JANUARY 7, 1936. No. 29324.

*W. H. Herdman* and *Heaton & Heaton,* for appellant.

*Golden P. Kratz* and *A. J. Kinnersley, contra.*

Heard before GOSS, C. J., GOOD, DAY, PAINE and CARTER, JJ., and RYAN and MESSMORE, District Judges.

RYAN, District Judge.

This is an action brought upon a lease covering lots 4, 5 and 6, in block 19, Carow's Second Addition to Dalton, Nebraska. The improvements on the premises consisted of a building covering about one-third the area of the lots. The front part of the building was adapted for use as a gasoline filling station and the vacant portions of the lots

were used as a free camp ground for tourists. The premises were owned by W. J. Ewing. On and prior to September 30, 1930, Rhea operated a filling station on the premises involved under a different lease with Ewing, the business conducted being the operation of a gasoline filling or service station. The gasoline pumps and underground tanks used in connection with the service station were the property of the defendant and were leased by Rhea, who was buying his products from the defendant and selling them at the station.

On September 30, 1930, Ewing, Rhea, and Randels, a representative of the defendant, met in the Dalton State Bank, of which Ewing was president. At that time Ewing executed a lease on said premises to Rhea for a term of three years from October 1, 1930, to October 1, 1933, for the sum of $30 a month and the upkeep on his automobile. The rental was payable on the first day of each month in advance. The lease was in the usual form and contained the usual covenants for forfeiture on default in payment of rent and that Rhea would not assign or sublet without the written consent of Ewing. On the same day a lease was drawn from Rhea to the defendant, Standard Oil Company, for the same premises, for the same term. The rent stipulated in this lease was: "A sum equal to one-half cent for each and every gallon of gasoline sold by second party at said filling station, payable monthly on the 15th day of each month for the preceding calendar month." It also contained this provision: "Said second party reserving the right to terminate this lease at any time by giving to first party thirty days' notice of its intention to so terminate said lease." The next provision is as follows: "In consideration of the foregoing, the first party hereby sets over and assigns to the second party, first party's licenses, consents and permits to maintain and operate a gasoline filling station on the above described premises; such assignment to be effective only during the term of this lease, and all renewals and extensions thereof."

Attached to this lease was the following:

"Consent of Owner

"The undersigned, owner in fee simple of the premises described in the within lease, hereby consents hereto and agrees with said Standard Oil Company that it may enter the hereinabove demised premises and remove therefrom any and all pumps, tanks and equipment placed thereon by the said Standard Oil Company, at any time within thirty (30) days after the expiration or prior termination of the undersigned's lease with the aforesaid party of the first part. The undersigned further agrees that if the said party of the first part shall default in the payment of the rent reserved in his lease with the undersigned, the said Standard Oil Company may, at its option, pay said rent and will thereupon succeed to the rights of the said party of the first part in the demised premises to the same extent as if the said party of the first part had assigned his lease to the said Standard Oil Company."

Rhea paid Ewing the rent due under his lease from Ewing for the months of October, November, and December, 1930, and January, 1931, but defaulted in the payment of rent due Ewing on February 1, 1931. The record does not disclose how much rent the defendant, Standard Oil Company, paid Rhea under its lease from him. The only reference to this subject found in the record appears in the cross-examination of the witness Rhea: "Q. I will ask you if the Standard Oil Company owes you for any rent on those premises? A. No."

On February 6, 1933, W. J. Ewing wrote the defendant that he was looking to it for the payment of the rent on the premises and for its assignment of the lease from Rhea. In reply to this letter the defendant wrote: "There evidently is some misunderstanding in regard to the payment of rent and I am arranging for our Paul Latschar to see you and go into this matter thoroughly. Mr. Latschar should be able to see you within the next ten days or two weeks."

The plaintiff, Ewing, was helplessly ill and unable to talk at the time of the trial. He expired shortly afterward and the action was revived in the name of the

administrator of his estate. The defendant, Standard Oil Company, on May 18, 1933, exercised its option to cancel its lease with Rhea and notified him in writing of such intention, effective June 16, 1933. After the cancelation of this lease by the defendant, Rhea took possession of the premises and has since occupied the same.

There is no material dispute of fact in the record. The case was tried to the court without the intervention of a jury. The trial court found, as a matter of law, that the lease executed by Rhea to defendant was in effect an assignment by Rhea to defendant of the lease executed by Ewing to Rhea, and by reason of said assignment, defendant became obligated to pay Ewing the rent stipulated in plaintiff's lease to Rhea. The defendant brings the case to this court on appeal.

The only question presented by the appeal is whether the lease from Rhea to the defendant amounted to an assignment of his lease with Ewing or whether it was a sublease. The defendant contends that this lease from Rhea to it was a sublease and that the trial court erred in finding that said lease amounted to an assignment.

It is an elementary principle of law that the relation of landlord and tenant is created by contract. The general rule to be applied in construing contracts is to ascertain and give effect to the intention and purpose of the parties executing such contract. As was said by this court in *Nebraska Hardware Co. v. Humphrey Hardware Co.*, 81 Neb. 693, 116 N. W. 659: "In interpreting a written contract, the meaning of which is in doubt and dispute, the court, in order to determine its meaning, will consider all the facts and circumstances leading up to and attending its execution, and will consider the relation of the parties, the nature and situation of the subject-matter, and the apparent purpose of making the contract. The court will, so far as possible, put itself in the place of the parties and interpret the contract in the light of the circumstances surrounding them at the time it was made and the object which they had in view."

The lease from Ewing to Rhea and the lease from Rhea to the Standard Oil Company were executed at the same time. They were executed in the bank of which Ewing was president. Ewing was familiar with the terms of both instruments and signed the written consent to the lease from Rhea to the defendant, Standard Oil Company, which is set out above. While it does not appear from the record, since Ewing was unable to testify, it is quite apparent that the reason for the execution of the two instruments instead of the defendant leasing direct from Ewing was that the defendant evidently desired a lease upon a gallonage basis and apparently Ewing desired to have the repair of his automobile in addition to the stipulated rental. The parties knew of this difference in the consideration named in the two instruments. Ewing knew that the Standard Oil Company did not expressly assume the payment of the cash rent to him, and it is not claimed that the defendant is liable for the reasonable cost of keeping Ewing's automobile in repair. Rhea paid the rent to Ewing for four months and was in default for more than two years before Ewing made any demand upon the defendant for the payment of the cash rent. Ewing was also aware that there was a reservation in the lease from Rhea to the defendant, giving the defendant the right to terminate the lease at any time by giving thirty days' notice to Rhea. There was no such provision in his lease to Rhea.

We think it quite apparent that the parties by their conduct treated the lease from Rhea to the defendant as a sublease and not as an assignment. In fact, we think that construction follows conclusively from this provision found in the consent: "The undersigned further agrees that if the said party of the first part shall default in the payment of the rent reserved in his lease with the undersigned, the said Standard Oil Company may, at its option, pay said rent and will thereupon succeed to the rights of the said party of the first part in the demised premises to the same extent as if the said party of the

first part had assigned his lease to the said Standard Oil Company."

In view of the facts above set forth and the rules of construction heretofore laid down by this court, we conclude that the learned trial court was in error in holding that the second lease amounted to an assignment. The judgment is accordingly reversed and the cause remanded, with instructions that it be dismissed.

REVERSED.