870

KENNETH WINCHELL, DOING BUSINESS AS PREMIER MINERAL
UPGRADING COMPANY, APPELLANT, V. NATIONAL BANK OF
COMMERCE TRUST AND SAVINGS ASSOCIATION, A
CORPORATION, APPELLEE.

152 N. W. 2d 2

Filed June 23, 1967. No. 36505.

Matthews, Kelley & Cannon, for appellant.

Mattson, Ricketts & Gourlay, for appellee.

Heard before WHITE, C. J., CARTER, SPENCER, BOSLAUGH, SMITH, McCOWN, and NEWTON, JJ.

WHITE, C. J.

This is a jury-waived law action, in which the district court, as the fact finder, found against the plaintiff on the issue of whether the defendant bank, in violation of its agreement and instructions, had negligently transferred bank funds to another bank without restricting the right of withdrawal in plaintiff. On appeal we affirm the judgment.

The judgment of the district court on this issue has the same force as a jury verdict and will not be set aside if there is evidence to support it. Conflicts in the evidence and reasonable inferences therefrom are re-

solved in favor of the defendant. Weiss v. Weiss, 179 Neb. 714, 140 N. W. 2d 15.

Sometime prior to August 1, 1957, plaintiff and three promoters, Sivils, Eneff, and Thompson, entered into a written partnership agreement concerning the promotion and use of a "uranium upgrading machine." Plaintiff's role was to finance the enterprise. The name used was "Premier Mineral Upgrading Company." Thompson, Eneff, and Sivils were in Craig, Colorado, negotiating for a lease on which to use the machine. On July 31, 1957, Thompson called Winchell in Omaha and told him the right to purchase a lease would expire at midnight August 1, 1957. Winchell agreed he would send the money by telegram and a later phone call supplied the bank's name, the Moffat County State Bank in Craig, Colorado. The next day, August 1, 1957, plaintiff came to the defendant bank in Lincoln, contacted Ted Thompson, a vice president, changed the name of an account he had in the name of "Mineral Upgrading Company" to "Premier Mineral Upgrading Company." Conversation followed as to transfer of funds from this account to the bank in Colorado. Ted Thompson prepared in long hand, on a pad, a telegram, later sent by code which read: "Air mailing to you to-day Bank Draft $15,000.00 Deposit to credit of Premier Upgrading Co Notify C. A. Sivils, Cosgriff Hotel." Ted Thompson testified he prepared the telegram with plaintiff's assistance, showed it to him, asked him whether it was as he wanted it, and the plaintiff stated it was the way he wanted it.

Ted Thompson testified that Winchell placed no restriction on the right to withdrawal; that he transferred the funds as Winchell directed; that he was directed to transfer funds to an account in the Moffat County State Bank; that he was not informed as to whether Winchell had an account in the Moffat County State Bank; that he did not know whether the account was an old or a new one; and that Winchell told him to transfer the funds exactly as the telegram indicated.

On the other hand, Winchell testified that he came to the bank to "transfer some money of this account into a like account in a bank in Craig, Colorado"; that it was to be a new account in the name of Premier Mineral Upgrading Company; that he "wanted the bank account set up in Craig and $15,000 put in it exactly like it was in this account in Lincoln"; that he specifically told Ted Thompson that only he (Winchell) would have the right to withdraw the funds in Colorado; and that the purpose of the transfer of the funds was to show financial responsibility in the company.

Ignoring the obvious conflict in this testimony, plaintiff's testimony is highly equivocal. In this action, he testified that he discussed signature cards with Ted Thompson. In an action in federal court aginst the Colorado bank for permitting an unauthorized withdrawal of the funds by the other three partners, plaintiff testified and admitted that there was no discussion with Ted Thompson about the execution of signature cards and that he knew the transfer was being made without any accompanying signature card. Of course, the telegram itself fully corroborates this.

In this case plaintiff testified he never heard about the telegram until he brought the Colorado law suit and that he never saw a draft of the telegram until then. In the Colorado law suit, he testified, referring to the telegram, that Ted Thompson asked him if they had done exactly what he had instructed and he told them, "Yes."

The telegram was received by the Colorado bank on August 1, 1957. The money arrived by draft 2 or 3 days later. When the telegram arrived, Sivils, Eneff, and Thompson were notified, the Colorado bank honored their signature cards, the money was all withdrawn, they paid for a pick-up truck, and issued a check for $3,600 to the North American Uranium Company as the agreed deposit on the lease.

It is the duty of an agent of limited authority to ad-

here faithfully to the instructions of his principal, and if he exceeds, violates, or neglects them, and loss results to his principal as a natural and ordinary consequence, he is liable therefor. Northern Assurance Co. v. Borgelt, 67 Neb. 282, 93 N. W. 226; Omaha National Bank v. Kiper, 60 Neb. 33, 82 N. W. 102.

We have briefly reviewed some of the pertinent testimony. It is amply sufficient to sustain the trial court's findings and judgment herein that the defendant bank did not breach any agreement with the plaintiff and that there was no negligence on the part of the defendant bank in violating, exceeding, or neglecting any instructions of the plaintiff, or in failing to specify any ownership of the fund involved herein in the transmittal thereof.

In conclusion, we note that the plaintiff brought suit against the Colorado bank for permitting unauthorized withdrawal of these funds by the other three partners. In denying recovery, the United States Court of Appeals (Winchell v. Moffat County State Bank, 307 F. 2d 280), found that plaintiff had failed to require the forwarding bank (the defendant herein) to restrict the right of withdrawal; that his testimony on that issue was "equivocal"; and that the "actions, imprudence, and negligence of the plaintiff created the situation" that produced the loss. Although these findings are not binding on this court in this case, they are persuasive and fully support our independent conclusions.

Other defenses as to authorization of the partners to use the money, and the issue of proximate cause, argued by the defendant, appear to have merit, but will not be discussed further as they are not necessary to disposition of this case. The judgment of the district court is correct and is affirmed.

AFFIRMED.