PAUL LUCHT, DOING BUSINESS AS PAUL LUCHT BODY SHOP, APPELLEE, v. AMERICAN PROPANE GAS CO., A CORPORATION, ET AL., APPELLANTS.

162 N. W. 2d 891

Filed December 6, 1968. No. 36728.

John E. Dougherty, for appellants American Propane Gas Co. and Phillips Petroleum Co.

Fraser, Stryker, Marshall & Veach, for appellant Transport Repair Service, Inc.

Eisenstatt, Morrison, Higgins, Miller, Kinnamon & Morrison and McCormack, McCormack & Brown, for appellee.

Heard before WHITE, C. J., CARTER, SPENCER, BOSLAUGH, McCOWN, and NEWTON, JJ.

SPENCER, J.

This is an action for damages sustained to property of the plaintiff in an explosion and fire, which occurred November 11, 1963, on the premises of the plaintiff when plaintiff subjected a propane tank truck, delivered to him for painting, to intense heat in a bake oven as part of the painting and drying process. A jury returned a verdict against all defendants in the sum of $86,200. Defendants perfected appeals to this court.

In determining the sufficiency of evidence to sustain a judgment, it must be considered in the light most favorable to the successful party. Every controverted fact must be resolved in his favor and he is entitled to the benefit of every inference that can reasonably be de-

duced from the evidence. Thompsen v. Miller, 177 Neb. 530, 129 N. W. 2d 498.

Applying the criterion above, we determine the facts to be as set out herein: American Propane Gas Company, a corporation, hereinafter referred to as American, delivered the truck, which was propelled by propane gas, to Phillips Petroleum Company, a corporation, hereinafter referred to as Phillips, for repair and painting. The truck in question carried liquid propane gas in two side-by-side cargo tanks, with a smaller supply tank on top which was used to propel it. After Phillips had completed the repair work, McCord, the district maintenance supervisor for Phillips, had the truck delivered to plaintiff to be painted because Phillips did not have the facilities to do the work.

Before it delivered the truck to Phillips, American pumped out all of the liquid gas in the two cargo tanks on the truck but, having no facilities to do so, did not steam clean or purge them. After Phillips' employees delivered the truck to plaintiff's premises, the plaintiff observed that one of the petcocks on the truck was frosted, which indicated to him that the tank still had some gas in it. Plaintiff then called McCord, told him about the petcock, and advised him that he would not paint the truck unless it was purged. He also told McCord that since the exterior of the truck was rough it should be sandblasted. Neither plaintiff nor Phillips had the facilities to sandblast or purge the vehicle. It is plaintiff's testimony that McCord instructed him to send the truck to Transport Repair Service, a corporation, hereinafter referred to as Transport. It is McCord's testimony that he instructed plaintiff to obtain a bid on the sandblasting and purging.

Exhibit 67 is an invoice furnished by plaintiff, dated November 7, 1963. This invoice indicates that plaintiff was to bill Phillips for the sandblasting and purging as well as for the painting. Plaintiff delivered the truck to Transport. Subsequently, Transport's foreman called

plaintiff and told him they would not sandblast the truck unless it was purged. Plaintiff told him that was what it was sent down for, and asked the cost. The foreman could not give plaintiff an estimate. Later, plaintiff obtained a bid by telephone from Reuben Johnson, Transport's president. Plaintiff communicated this bid to McCord, who thought it was too high. McCord told plaintiff he would have to check it out with his employers, which he did. In the interim, McCord happened to see Johnson at a restaurant, and asked him about the bid and was told he could take it or leave it. On this occasion, Johnson told McCord that Transport would not sandblast the truck without purging it. Subsequently, McCord received authority to accept the bid. He attempted to contact the plaintiff, who was out of the city. When he could not do so, he called Transport's foreman by telephone and told him to go ahead with the job. The next day McCord told plaintiff he had instructed Transport to go ahead with the job.

McCord did not have possession of the truck after it was delivered to plaintiff. McCord had no contact with Transport after he told Transport's foreman to go ahead with the job, or with plaintiff after he relayed this information to him, until after the explosion. He did not see the truck after plaintiff delivered it to Transport. When he told Transport's foreman to go ahead with the job, it was his understanding the truck would be purged, because he had been told Transport would not sandblast the truck without purging it and that plaintiff would not paint it unless it was purged. The bid which he had submitted to his superiors was for both jobs.

After Transport sandblasted the truck, its foreman called plaintiff and told him the truck was ready. Plaintiff sent an employee to bring the truck back to his shop, but did not receive a work order or ascertain what work Transport had done. This was sometime Friday afternoon, November 8, 1963. The employee who painted the

truck testified that when he began work that afternoon, he detected the odor of gas. It smelled like rotten eggs. He could smell gas even when the truck was not running. Neither this employee nor the plaintiff checked to see if the truck had actually been purged. The evidence is undisputed that this fact could have been readily determined by turning a petcock.

The lower portion of the truck was painted on Saturday and driven into the bake oven for a period of 15 minutes to dry the paint. This bake oven is heated to 180 degrees for the drying process. Monday, November 11, 1963, the painting on the truck was completed and it was backed into the bake oven about 11:15 a.m. When the painter returned from lunch, about 1 p.m., he heard a hissing noise coming from the furnace room. He ran to that room and turned the switch which controlled the flame of the furnace. He then said to his foreman, "I think there's something wrong," and the explosion occurred. Less than a minute elapsed between the time the painter heard the hissing noise and the explosion. It was this employee's testimony that at the time he drove the truck into the bake oven he knew it contained some form of gas.

After the explosion, in the presence of plaintiff, Johnson, Transport's president, told the fire captain that the truck had been purged. It is undisputed that the truck had not been purged, and that Transport did not inform plaintiff or his employees of this fact.

American and Phillips moved for directed verdicts at the close of the evidence, and after the verdict, for judgments notwithstanding the verdict. These motions were overruled. It is apparent that the trial court believed that these defendants had a nondelegable duty to furnish plaintiff with a truck which had been purged in a proper manner for painting. We do not question the duty in the usual situation to furnish a truck which had been purged in a proper manner for painting or to direct attention to the fact that the truck had not been purged.

The general rule where a party is responsible for a dangerous instrumentality is that he is charged with the duty to take suitable precautions to avoid injury or damage to persons or property rights in its proximity, and his failure to do so is negligence. Adapted from Rose v. Buffalo Air Service, 170 Neb. 806, 104 N. W. 2d 431. That is not the situation we have in the present case.

Granting that a propane transport is a dangerous instrumentality, this case is readily distinguishable from those where a duty may be nondelegable. We do not agree with the plaintiff's conclusion that the evidence justifies a finding that American and Phillips had the duty to be certain Transport had purged the truck before the plaintiff picked it up. Plaintiff, by his own actions, relieved these defendants of that responsibility. When the truck was delivered to plaintiff in the first instance, plaintiff discovered that it had not been purged. He then advised McCord, the representative of these defendants, that he would not paint it until it had been purged. Thereafter, he was not relying on American or Phillips to see that the truck was purged. Rather, plaintiff, being fully informed, undertook to secure a bid to purge and to sandblast the truck. Whether he contacted Transport at McCord's suggestion or not is immaterial on the facts herein. Plaintiff had the truck delivered to Transport and personally secured a bid for both the sandblasting and the purging. He then incorporated the bid he received from Transport in the cost estimate he furnished to McCord. When Transport had ostensibly finished the sandblasting and the purging, plaintiff picked up the truck on the assumption that it had been sandblasted, which was evident, and that it had been purged, which, while not so evident, could have been checked by merely turning a petcock.

Plaintiff was well acquainted with the propensities of gas. He knew it was explosive. His employee smelled gas after the truck was returned to plaintiff's premises. Both plaintiff and his employee knew that the truck

would be placed in the bake oven with a constant temperature of 180 degrees.

What is the negligence of the defendants, American and Phillips, which would justify the submission of the case against them to the jury? We find none. Plaintiff knew that these defendants had not had possession of the truck after he delivered it to Transport, and he knew that they expected it to be purged before it was either sandblasted or painted. He had included the cost of both the sandblasting and the purging, which was one figure, in the cost estimate he furnished to defendants. The record does not indicate that these defendants even knew that the plaintiff had picked up the truck from Transport until after the explosion. As to them, we are satisfied the evidence justifies the conclusion that the plaintiff had relieved them of any duty to see that the truck actually was purged.

If by any process American and Phillips could be guilty of some negligence, we are convinced that as to them the plaintiff would be guilty of contributory negligence as a matter of law. In an action based on negligence to which the comparative negligence rule has application, wherein the evidence shows beyond reasonable dispute that the plaintiff's negligence was more than slight in comparison with that of the defendant, the action should be dismissed. Rogers v. Shepherd, 159 Neb. 292, 66 N. W. 2d 815. The motions for directed verdicts and later for judgments notwithstanding the verdict, filed by American and Phillips, should have been sustained.

As between the plaintiff and Transport we have a different problem. On the facts, as the jury must have determined, if Transport had purged the truck, the explosion would not have occurred. Transport alleges eight assignments of error. We condense them, as follows: The court should have found plaintiff guilty of contributory negligence sufficient to bar a recovery; the court erred in giving instructions Nos. 15 and 18; and

the court erred in failing to instruct upon the doctrine of assumption of risk.

The trial court overruled Transport's motion for a directed verdict, and submitted the issue of contributory negligence to the jury. On the facts as we determine them, we are convinced that a jury question was presented. As set out hereinafter, while plaintiff may have failed to exercise ordinary care it cannot be said as to Transport that he is guilty of negligence as a matter of law. The trial court fully instructed the jury on the issue of comparative negligence.

Transport assigns as error in this court the giving of instruction No. 15, but did not do so in its motion for new trial. For an error of law occurring at the trial to be considered by this court, the alleged error must be properly presented to the trial court and properly preserved. Otherwise, the appellant is precluded from raising it on appeal. Hancock v. Parks, 172 Neb. 442, 110 N. W. 2d 69.

Transport contends that instruction No. 18 requires a higher degree of care on the part of defendant than was required. The instruction in essence states that a degree of care commensurate to the danger involved is required when one is dealing with propane gas to avoid injury and damage. When instruction No. 18 is read in its entirety, it appears to us to be a proper instruction on the facts of this case. Instructions given to a jury must be construed together, and if when considered as a whole they properly state the law, that is sufficient. Bunselmeyer v. Hill, 179 Neb. 140, 137 N. W. 2d 354.

Transport argues that it was entitled to an instruction on assumption of risk. No requested instruction was submitted on this point. While plaintiff had full knowledge of the danger, he had every reason to believe that Transport had purged the truck. He had delivered it to Transport for that purpose. He had been told that Transport would not sandblast the truck unless and until it was purged, and the bid he received was for

both jobs. When plaintiff was called and told that the truck was ready, it was readily apparent that it had been sandblasted and it was not too unreasonable for plaintiff to believe that it had also been purged. It is of interest that Transport's president, even after the explosion, thought that the truck had been purged. The failure of the plaintiff to inspect the truck on its return from Transport is at most a failure to exercise ordinary care. It is not a question of assumption of risk, but rather one of contributory negligence requiring an instruction on comparative negligence. This issue was fully submitted by the trial court. Transport's assignments of error cannot be sustained.

The judgment of the district court is reversed as to American Propane Gas Company and Phillips Petroleum Company, and the action is dismissed as to them. The judgment of the district court is affirmed as to Transport Repair Service, Inc.

AFFIRMED IN PART, AND IN PART
REVERSED AND DISMISSED.