HENRIETTE J. MCBRIDE, AS EXECUTRIX OF THE LAST WILL AND ESTATE OF ROBERT J. MCBRIDE, DECEASED, APPELLEE, V. FORT KEARNEY HOTEL, INC., APPELLANT.

176 N. W. 2d 911

Filed May 8, 1970. No. 37464.

Knapp, Tarrell & State and Marmion F. Yeagley, for appellant.

H. L. Blackledge, for appellee.

Heard before WHITE, C. J., CARTER, SPENCER, BOSLAUGH, SMITH, McCOWN, and NEWTON, JJ.

CARTER, J.

This is an action at law to recover damages for breach of contract by the defendant in failing to pay the cash rentals due on two leases of an outdoor steel advertising sign. A jury was waived and the court found for the plaintiff on both leases. The defendant has appealed.

The plaintiff's deceased, Robert J. McBride, constructed the outdoor advertising sign in the winter of 1965-1966 in substantially an east-west position near the south end of an overpass in Kearney, Nebraska. The complete structure was about 65 feet in height and was supported by four heavy 12-inch pipes set in concrete. The sign proper at the top was 40 feet by 10 feet and was attached to stringers welded to the pipes. The sign proper had back to back surfaces each of which was covered with 20 steel panels 10 feet 7 inches in height and 2 feet in width. Electric lights were placed at the top of the sign which automatically cast light on the sign during periods of darkness. The foregoing materials were purchased, installed, and paid for by McBride.

On January 5, 1966, McBride leased the south side of the sign to the Fort Kearney Hotel, Inc., from February 1, 1966, to December 31, 1970, at a rental rate of $95 per month. On November 15, 1966, McBride leased the north side of the sign to the Fort Kearney Hotel, Inc., from January 1, 1967, to December 31, 1970, at a rental rate of $55 per month. Fort Kearney Hotel, Inc., paid the rentals due under the leases to and including April 1968 and thereafter refused to make the payments

and asserted a breach of the leases. This action is for the rentals due for May 1968 to and including December 1968 in the total amount of $1,200.

The first lease shows that at the time it was executed by the parties, Joe P. Helleberg was the owner of the Fort Kearney Hotel, Inc., and a signer of the lease. He did not testify. There is testimony by Joe Gallagher, the vice president and manager of the Fort Kearney Hotel, Inc., that in April 1968 he observed that the paint on the south side of the sign was chipping or peeling off and making the wording of the sign illegible. He testified that the damage to the sign was not contributed to by the officers or employees of the Fort Kearney Hotel, Inc.

There are two paragraphs of the lease which bear upon the issue before the court. They are: "Helleberg is to pay for the painting of the sign, and agrees that any person or firm employed by Helleberg for such purpose shall be required to carry their own liability and workmen's compensation insurance. McBride agrees to carry liability, personal property, wind and hail insurance on the sign structure. Helleberg agrees not to install a neon sign or make any holes in the sign, or otherwise alter or disfigure the construction thereof in any way without written permission from McBride. * * *

"In the event said sign is damaged or destroyed other than by the acts or omissions of Helleberg, his agents or employees, then Helleberg is relieved of any liability to pay rental for the period until such sign has been repaired and restored to is intended use." It is clear from the lease that the Fort Kearney Hotel, Inc., was to pay for the painting of the sign. We think it is also clear that the Fort Kearney Hotel, Inc., was to paint the sign, otherwise there was no reason for the provision that the hotel company should carry liability and compensation insurance on any person or firm employed by it for that purpose. It is contended by the hotel company that the damage was caused by other than the hotel

company, its agents, or employees and, under the second quoted paragraph of the lease, it is relieved from the payment of the rentals. In a section of the lease not herein quoted, it is provided that McBride agrees to keep the structure to which the sign is attached painted and in repair.

The evidence shows that McBride sought the assistance of Dowers & Kempf Sign Service in determining the nature of the surface to be applied on the sign. As a result of this meeting, McBride selected preprimed steel panels which were ordered by the sign service company. The steel panels for both sides of the sign were purchased in one order, were shipped in one lot, delivered at the same time, and eventually used on both sides of the sign. One of the partners, Kempf, an experienced sign painter, was employed by the hotel company to paint the sign. He testified that the primer on the panels was a khaki or yellowish-green color which appeared to be cyclomate, a primer recommended by paint companies. It is noteworthy that the paint on the north side of the sign did not chip or peel, and that certain colors on the south side of the sign did not chip or peel. The evidence will not support a finding that the steel panels were not preprimed.

There is no provision in the lease regarding the surfaces of the sign to be installed. The painter employed by the hotel company, a painter of long experience, testified that he merely assumed that the panels had been properly preprimed before painting the signs. He further testified that if he had known then what he knew at the time he testified, he would have proceeded with the painting of the sign much differently than he did. The evidence does not establish with any certainty the cause of the chipping or peeling on the south side of the sign only.

On the evidence, the trial court could well find, as it did, that McBride agreed to keep the structure, other than the signboard, painted and in repair and that the

hotel company was to paint and pay for the painting of the signboard. The trial court could find from the evidence that the defects in the paint job resulted from the acts of omission on the part of the painter, either in failing to correctly determine the nature of the surface to be painted or the type or quality of the paint to be applied. Under such circumstances, if found to be true, the defect complained of is caused by the hotel company's agents or employees within the meaning of the lease.

"The general rule to be applied in construing contracts is to ascertain and give effect to the intention and purpose of the parties executing such contract. As was said by this court in Nebraska Hardware Co. v. Humphrey Hardware Co., 81 Neb. 693, 116 N. W. 659: 'In interpreting a written contract, the meaning of which is in doubt and dispute, the court, in order to determine its meaning, will consider all the facts and circumstances leading up to and attending its execution, and will consider the relation of the parties, the nature and situation of the subject-matter, and the apparent purpose of making the contract. The court will, so far as possible, put itself in the place of the parties and interpret the contract in the light of the circumstances surrounding them at the time it was made and the object which they had in view.'" Clough v. Standard Oil Co., 130 Neb. 136, 264 N. W. 170. See, also, Podewitz v. Gering Nat. Bank, 171 Neb. 380, 106 N. W. 2d 497.

The record discloses that McBride caused the lease to be prepared and the hotel company argues that it should be contrued most strongly against him. Ericson v. Nebraska-Iowa Farm Inv. Co., 134 Neb. 391, 278 N. W. 841. The rule is not questioned and irrespective thereof the finder of facts found that there was no warranty in the lease, express or implied, upon which the hotel company had a right to rely. The lease contains no provision imposing upon McBride any duty to prime or paint the faces of the sign. The finding of the

trial court in this respect is sustained by evidence which, if believed, is sufficient to sustain the judgment entered. The hotel company accepted the use of the sign as it was, and employed and paid a painter of long experience to paint it. McBride did not agree to paint the sign, nor did he warrant that the panels of the sign were pre-primed or that the paint applied by the hotel company or its agent was suitable for the purposes of the hotel company.

"In determining the sufficiency of evidence to sustain a judgment, it must be considered in the light most favorable to the successful party. Every controverted fact must be resolved in his favor, and he is entitled to the benefit of every inference that can reasonably be deduced from the evidence." Lucht v American Propane Gas Co., 183 Neb. 583, 162 N. W. 2d 891. See, also, Kehm v. Dumpert, 183 Neb. 568, 162 N. W. 2d 520.

This is an action at law in which a jury was waived. "In a jury-waived law action, the judgment of the district court on the facts has the same force as a jury verdict and will not be set aside if there is sufficient, competent evidence to support it." Winchell v. National Bank of Commerce Trust & Sav. Assn., 181 Neb. 870, 152 N. W. 2d 2. "The judgment of the trial court in an action at law where a jury has been waived has the effect of a verdict of a jury and it will not be set aside unless clearly wrong." Wonderling v. Conley, 182 Neb. 446, 155 N. W. 2d 349.

The evidence was in conflict and the facts as found by the trier of facts are supported by evidence which, if believed, are sufficient to support the judgment. Under these circumstances, the judgment is not clearly wrong and an affirmance is required.

The second lease is in the same language as the first except as to its date, the term of the lease, and the monthly rentals to be paid. The north side of the sign which was the subject of the second lease admittedly was not damaged. The failure to pay the rentals due on

the second lease constituted a breach of the lease. The trial court, on the reasoning applicable to the first lease, was correct in entering judgment for McBride on the cause of action ·on the second lease.

We find no prejudicial error in the record and the judgment of the district court is affirmed.

AFFIRMED.

BOSLAUGH, J., dissenting in part.

I dissent from that part of the opinion of the court which holds that the evidence was sufficient to sustain the finding for the plaintiff on the first cause of action.

Fred Kempf, who painted the sign, testified positively that the paint peeled from the panels on the south side of the sign "because the primer was letting go of the sheet metal surface." This testimony is not contradicted any place in the record. A photograph which appears in the record indicates that the peeling was not uniform as to the panels or the colors of paint, but there is no evidence that the painter was negligent or that the paint which he applied was defective.

The lease relieved the defendant from the payment of rental in the event the sign was damaged other than by the acts or omissions of the defendant. The defendant should not be required to bear the loss resulting from the defective primer which was applied to the panels by the manufacturer before they were sold to the plaintiff.