STATE OF NEBRASKA, APPELLEE, V. DARRELL L. PENAS,
Appellant.

263 N. W. 2d 835

Filed March 22, 1978. No. 41396.

Thomas A. Wagoner, for appellant.

Paul L. Douglas, Attorney General, and Gary B. Schneider, for appellee.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, McCOWN, CLINTON, BRODKEY, and WHITE, JJ.

SPENCER, J.

Defendant was charged with driving while under the influence of alcoholic liquor, third offense, and with resisting arrest. The jury acquitted him of resisting arrest, but found him guilty of driving while under the influence of alcoholic liquor. The District Court placed defendant on probation for a period of 3 years. Defendant appeals, alleging two assignments of error: (1) The failure to suppress the chemical analysis obtained in alleged violation of defendant's constitutional rights; and (2) finding the records of prior convictions were sufficient to substantiate a conviction for a third offense. We affirm.

At approximately 1:30 a.m., on the morning of September 23, 1976, Officer Ferry of the Grand Island police department was operating his police

cruiser in a westerly direction on Fourth Street in the City of Grand Island. He observed a van turn onto Fourth Street from the south, heading west, approximately 1 block ahead of him. The van made an exceedingly wide left turn, narrowly missing parked vehicles. The officer started in pursuit. He observed the driver overcorrect after missing the parked vehicles, and veer into the eastbound oncoming lane of traffic. This forced the eastbound traffic to stop or pull out of the way to avoid being hit by the van. Officer Ferry accelerated to catch up to the van as it turned onto Cleburn Street. He rounded the corner of that street and saw the van make a "U" turn and park on the west side of the street. He pulled up directly in front of the van on the same side of the street.

Officer Ferry testified he came to a stop approximately 6 feet away from the van. He testified the police cruiser he was in bore abundant indicia of police identity, including visobar lights, a red bubble light, and two police insignias. Ferry then observed defendant rapidly alight from the van and start toward a house which he later learned was defendant's residence.

Ferry got out of the cruiser and called to the defendant to come over to him. He was then 6 or 7 feet away. Defendant then started running toward a house on the northwest corner of Cleburn and Fourth Streets. Ferry yelled, "I'm a police officer, stop." Defendant did not stop, so Ferry again asked him to stop and started running after him. Defendant ran to a side door of the residence, with the officer approximately 5 yards behind. When the officer reached the door of the residence the inside door was standing open but an aluminum glass and screen exterior door was closed. Officer Ferry opened the screen door but could not see anyone or determine whether defendant had gone upstairs or downstairs.

Being concerned for his own safety, Officer Ferry returned to his cruiser and radioed for assistance. Officer Kruse responded to the call almost immediately and both officers returned to the same door. There were lights inside and they could see a landing inside the door and steps going up and down. From the outside they could see the defendant with his shirt off, standing five or six steps down the stairs. Ferry opened the door "and called to the individual to come here." Defendant responded with profanity and asked why they were in his house. Ferry again asked him to come so they could talk to him. Defendant came upstairs and demanded their reason for being there. Ferry observed his eyes were bloodshot, red in color. He could also detect alcohol on his breath. When defendant refused to go outside, the officers took hold of his belt and shoulder and directed him outside the house where they asked him to perform some sobriety tests. Defendant refused. The officers then arrested him and took him to the police station. A breathalyzer test showed defendant's blood alcohol content was .19 percent.

Defendant filed a motion to suppress the results of the breathalyzer test on the ground that it was obtained as a consequence of an illegal arrest and unconstitutional search and seizure. The motion was overruled. After trial and conviction, this appeal followed.

Defendant contends his warrantless arrest was illegal and the result of a violation of his constitutional right to be secure in his home against unreasonable searches and seizures. The State contends the officers were authorized to enter defendant's home and make an arrest without a warrant and they substantially complied with statutory requirements for a warrantless arrest.

Defendant contends the violation of section 29-411, R. R. S. 1943, requires the exclusion of the results of the breath analysis. Section 29-411, R. R. S. 1943,

provides for executing a warrant for the arrest of a person charged with an offense, or a search warrant, or when authorized to make an arrest for a felony without a warrant, the officer may break open any outer or upper door or window of a dwelling house or other building, if after notice of his office and purpose he is refused admittance. Even if section 29-411, R. R. S. 1943, were involved, the State contends its terms were substantially complied with. The State argues the officers gave the statutory notice if section 29-411, R. R. S. 1943, is applicable. The State further contends the facts of the arrest fall within the exigent circumstances exception to the necessity of complying with that statute.

At the time defendant rapidy left his vehicle, Officer Ferry started out of his car, calling to the defendant. At this point, the officer and the defendant were only 6 or 7 feet apart. The defendant started running toward his house, at which time Officer Ferry yelled he was a police officer, but defendant did not stop. Defendant could not help but be aware he was fleeing from a police officer. The evidence is conclusive defendant was seeking the sanctuary of his residence to avoid contact with the officer.

Section 29-404.02, R. R. S. 1943, is the statute applicable herein. It provides as follows: "A peace officer may arrest a person without a warrant if the officer has reasonable cause to believe that such person has committed:

"(1) A felony; or

"(2) A misdemeanor, and the officer has reasonable cause to believe that such person either (a) will not be apprehended unless immediately arrested; (b) may cause injury to himself or others or damage to property unless immediately arrested; (c) may destroy or conceal evidence of the commission of such misdemeanor; or (d) has committed a misdemeanor in the presence of the officer."

This section permits an officer to arrest a person

without a warrant if he has reasonable cause to believe the person has committed a misdemeanor in the presence of the officer. Defendant's erratic driving and subsequent conduct was sufficient to give Officer Ferry reasonable cause to believe defendant was under the influence of either drugs or liquor. Further, defendant obviously was attempting to evade contact with the officer.

In this case the circumstance known as "hot pursuit," which is recognized as an exigent circumstance, renders the acts of Officer Ferry valid. A warrantless entry is valid if police officers enter under exigent circumstances of hot pursuit. United States v. Santana, 427 U. S. 38, 96 S. Ct. 2406, 49 L. Ed. 2d 300 (1976). Even if it could be said probable cause for an arrest was lacking, the officer was entitled to make an investigatory stop. We are of the opinion United States v. Santana, *supra*, supports the decision of the trial court herein. The holding in that case is: "A suspect may not defeat a warrantless arrest set in motion in a public place upon probable cause by the expedient of escaping to a private place." In Santana the defendant was standing in the doorway of her home when the police drove up. The police pulled within 15 feet of her and got out of their van, shouting "police," and displaying their identification. As they approached, Santana retreated into the vestibule of her home. The officers followed and seized her holding some drugs and marked money.

The instant case is not too different from Edwards v. United States (D. C. Court of Appeals, 1976), 364 A. 2d 1209, which followed Santana. There, police officers dressed in plain clothes and driving an unmarked car observed the defendant and a companion late at night walking up the street at a moderate pace, carrying a pillowcase. They had not seen defendant or his companion commit any crime, and had no knowledge of any crime having been com-

mitted. When they sought to make an investigatory stop, the defendant fled to his apartment in a nearby building. The District of Columbia Court of Appeals held when a citizen has knowingly placed himself in a public place, and valid police action is commenced in that public place, the citizen cannot thwart police action by fleeing into a private place.

As a collateral point, there could be a question as to whether Officer Ferry ever entered the home of defendant Penas. Ferry stepped inside the screen door onto a landing or entryway similar to a vestibule or chamber between the outer door and the actual living area. From this landing, steps led up to a door to the upper part of the house and down to the basement apartment where the defendant lived. The record does not indicate whether there was a door or some partition between the staircase area and the actual living areas. There is authority to the effect that a vestibule is considered a public area for the purpose of applying Fourth Amendment rules. United States v. Calhoun, 542 F. 2d 1094 (9th Cir., 1976); United States v. Santana, 427 U. S. 38, 96 S. Ct. 2406, 49 L. Ed. 2d 300 (1976).

Defendant Penas' second assignment of error is the alleged insufficiency of the record of the two prior convictions for operating a motor vehicle while under the influence of alcoholic liquor, to substantiate a conviction for a third offense. There is no merit to this assignment. The record of the two prior convictions are contained in exhibits 2 and 3. When exhibit 2, covering the conviction of January 24, 1975, was offered, defense counsel said: "Your Honor, we have no objection to Exhibit No. 2." Defendant's present counsel represented the defendant when he pled guilty to that offense.

As to exhibit 3, covering the conviction of October 22, 1972, the record is as follows: "MR. POTTER: At this time the State would offer proposed Exhibit 3, Your Honor.

"THE COURT: All right, Mr. Wagoner?

"MR. WAGONER: We have no objection, Your Honor."

Defendant not only did not object to the admission of these two previous convictions, but specifically stated that he had no objection to their admission.

In order for an error of law occurring at trial to be considered by the Supreme Court, the alleged error must be properly presented to the trial court and properly preserved. Lucht v. American Propane Gas Co., 183 Neb. 583, 162 N. W. 2d 891 (1968).

Not only was there no objection made to the exhibits sustaining the previous convictions, but their alleged insufficiency was not assigned as error in defendant's motion for a new trial. The assignment not only is without merit, but on the record is frivolous.

The judgment is affirmed.

AFFIRMED.

McCOWN, J., dissenting.

Some additional facts are material. At no time during any of the occurrences here did the police officer ever turn on his red lights or his siren. During the entire time Officer Ferry observed defendant's van, the only erratic driving he observed or testified about was the wide turn and overcorrection into the wrong lane of traffic which first attracted the officer's attention.

When the officer stopped his cruiser in front of the defendant's car, the defendant had already turned off his ignition and lights and gotten out of the van. It was 1:30 a.m. There is no evidence that there was any light in the area except for the headlights of the police cruiser, and the defendant was looking into those lights. There is no evidence that the defendant could see any indicia of police identity on the car, nor that the man driving the car was a police officer. Officer Ferry, when he opened his car door, called to the defendant to come over to him,

and that command started defendant's flight. Thereafter Officer Ferry identified himself as a police officer, ordered the defendant to stop, and ran after him.

When Officer Ferry opened the outer door of the house, he could not see anyone, nor determine whether the defendant had gone up the stairs from the landing or down the stairs. Officer Ferry then returned to his cruiser and radioed for assistance. There is no evidence as to the exact amount of time it took for Officer Kruse to respond, although there is evidence that it was prompt. Both officers then returned to the side door of the residence.

There were then lights on inside and they could see the defendant, with his shirt off, standing five or six steps down the stairs. They opened the door and went in onto the stair landing. They did not knock or ring the doorbell, announce their official purpose, nor request permission to enter. The side door through which the officers entered defendant's residence opened onto a landing on an inside stairway. Steps led up from the landing to the first floor of the residence, and steps led down from the landing to the basement. The stairway was a commonplace residential stairway, and the evidence will not support the conclusion that it was a vestibule or public area.

At no time while they were in the house did the officers tell the defendant he was under arrest, nor tell him what their purpose was, even after they saw his eyes and smelled his breath. It was only after the defendant was forcibly removed from the house, and after he refused to perform the sobriety tests ordered by the officers, that the defendant was formally arrested and taken to the police station.

Distinctions between a misdemeanor and a felony are critical in this case. Although the majority opinion tacitly concedes that the offense of operating a motor vehicle while under the influence of alco-

holic liquor is a misdemeanor, the distinctions between a misdemeanor and a felony in the context of this case are ignored.

The offense of driving while under the influence of alcoholic liquor, section 39-669.07, R. R. S. 1943, although it is a crime, is not designated as either a misdemeanor or a felony. It appears in the statutes under the category of "Serious Traffic Offenses." It is, nevertheless, clear that a violation of that section is a misdemeanor rather than a felony. Repetition of the offense enhances the penalty, but does not change the nature of the offense. It is also clear from the record here that neither of the arresting officers had any cause to believe that the defendant might be guilty of a felony of any kind.

The common law did not authorize the arrest of persons guilty or suspected of misdemeanors except in cases of a breach of the peace. Prior to 1967 in Nebraska a peace officer was authorized to arrest a person for a misdemeanor without a warrant only if the misdemeanor was committed in the presence of the officer. In 1967 the Legislature, for the first time, broadened that authority. Section 29-404.02, R. R. S. 1943, now provides: "A peace officer may arrest a person without a warrant if the officer has reasonable cause to believe that such person has committed:

"(1) A felony; or

"(2) A misdemeanor, and the officer has reasonable cause to believe that such person either (a) will not be apprehended unless immediately arrested; (b) may cause injury to himself or others or damage to property unless immediately arrested; (c) may destroy or conceal evidence of the commission of such misdemeanor; or (d) has committed a misdemeanor in the presence of the officer."

The statute retained the traditional authority for a warrantless arrest for a misdemeanor committed in the presence of the officer, and added authorization

to arrest without a warrant for misdemeanors committed outside his presence only if there was reasonable cause to believe a misdemeanor had been committed *and* reasonable cause to believe that one of the three specific circumstances set out in subsection (2) (a), (b), or (c) might occur.

It will be noted that whether the misdemeanor was committed in the presence of the officer or outside his presence, reasonable cause to believe that the person has committed a misdemeanor is still a necessity. The facts in this case clearly gave Officer Ferry the authority to make an investigatory stop of the defendant's vehicle in order to determine whether there was probable cause for an arrest. The fact that the defendant momentarily drove his vehicle on the wrong side of the road, however, did not constitute probable cause to make an arrest for driving while under the influence of alcoholic liquor. A founded suspicion which will support a momentary investigatory or detention stop cannot be equated with probable cause, nor will such founded suspicion, without more, justify an arrest. Much less does it justify a warrantless entry into a house to make an arrest.

If there was "hot pursuit" to begin with by Officer Ferry, it certainly ended when he returned to his patrol car and called for assistance. The officers' conduct after they entered the defendant's residence demonstrates that they entered the residence to seek evidence that would furnish probable cause for an arrest and not to arrest the defendant on probable cause already established. Even if it were conceded for purposes of argument that the officers had probable cause to arrest the defendant for driving while intoxicated, there was still no authority to enter the defendant's residence as they did here.

Section 29-411, R. R. S. 1943, provides in relevant part: " * * * when authorized to make an arrest for a felony without a warrant, the officer may break

open any outer or inner door or window of a dwelling house or other building, if, after notice of his office and purpose, he is refused admittance; * * *." It is obvious that this section applies only to felonies and not to misdemeanors. It is also obvious here that even if the statute applied to a misdemeanor arrest, the specific terms of the statute were not complied with. The officers here did not request admission, nor were they refused. They simply opened the door and entered the residence. Even after their entry the officers did not tell the defendant he was under arrest, nor tell him what the purpose for entering was.

The majority opinion ignores the requirements of section 29-411, R. R. S. 1943, and indirectly holds that its procedural requirements may be ignored, even for a misdemeanor. Freedom from intrusion into the privacy of one's home is the cornerstone of the protection afforded by the Fourth Amendment. Even where the crime is a felony and there is probable cause for arrest, a warrant is ordinarily required in order to justify a forcible entry into a person's residence. This court has consistently held that a search or seizure in a place of residence without a warrant is not justified under the Fourth Amendment to the Constitution of the United States except for probable cause *and* the existence of exigent circumstances or other recognized exception. State v. Patterson, 192 Neb. 308, 220 N. W. 2d 235. None of the statutory circumstances spelled out in section 29-404.02, R. R. S. 1943, were present here.

Every case cited in the majority opinion involves a felony. The case of United States v. Santana, 427 U. S. 38, 96 S. Ct. 2406, 49 L. Ed. 2d 300, did not hold that hot pursuit constituted exigent circumstances. The defendant Santana was standing on the threshold of her house holding a sack that the officers reasonably believed contained drugs and bait money. There was probable cause to make the

arrest and "the need to act quickly." When the officers sought to arrest her, she escaped into the vestibule of the house, where they arrested her. The Supreme Court held that the defendant, standing in an open doorway, was in a public place when the police, acting on probable cause, first sought to arrest her. The court determined that the defendant could not thwart the otherwise proper arrest in a public place by retreating into a private place, and that the arrest and seizure of her person under those circumstances did not violate the Fourth Amendment. There is little resemblance between that case and this one. "Hot pursuit" does not establish probable cause, nor transform a misdemeanor into a felony. In this misdemeanor case it means only that the police were following the defendant. Even that "hot pursuit" ended several minutes before the officers entered the defendant's house.

The majority opinion here holds that without knocking, requesting permission, or announcing their identity and purpose, police officers may enter a suspect's house without a warrant, in the middle of the night, to investigate, or to seize and arrest a person for a misdemeanor which the officers reasonably suspect may have been committed; provided the officers had followed the suspect to the house, saw him enter, and entered themselves a few minutes thereafter. No case in the United States that we have been able to find has ever gone so far. If the majority opinion is correct, the Fourth Amendment guaranty: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated * * *" becomes meaningless.

CLINTON and WHITE, C. THOMAS, JJ., join in this dissent.