705 F.2d 278
 Eugene KORT, et al., Plaintiffs,
v.
WESTERN SURETY COMPANY, A Corporation, Defendant and
Third-Party Plaintiff, Appellant,
v.
Elmer W. CHRISTENSEN and Lydia M. Christensen and Donald L.
Classen and Eloise M. Classen, Third-Party
Defendants, Appellees.
 No. 82-1299.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Dec. 14, 1982.
Decided April 14, 1983.
 
 1
 William L. Walker, Walker & Ludlam, Lincoln, Neb., for appellant.
 
 
 2
 Kenneth F. George, State & Yeagley, Kearney, Neb., for Donald L. Classen and Eloise M. Classen.
 
 
 3
 Luebs, Dowding, Beltzer, Leininger & Smith, Grand Island, Neb., for appellees Elmer W. Christensen and Lydia M. Christensen.
 
 
 4
 Before BRIGHT and McMILLIAN, Circuit Judges, and HARRIS,* Senior District Judge.
 
 
 5
 OREN HARRIS, Senior District Judge.
 
 
 6
 This case is before the court on appeal from a denial of the motion by appellant, Western Surety Company (Western Surety), for a new trial or in the alternative judgment notwithstanding the verdict by the United States District Court for the District of Nebraska.[1] This appeal involves questions of supersession and interpretation of contracts as applicable to Nebraska law.
 
 
 7
 The appellees, Elmer W. Christensen and Lydia M. Christensen (Christensens) and Donald L. Classen and Eloise M. Classen (Classens) formed a corporation in which they were the owners and operators of three grain elevators in the State of Nebraska. As a requirement of operation and licensing in Nebraska, the appellees were required to provide bond to cover any losses at the three elevators. The appellees obtained such bond from Western Surety Company, initially issued in 1962. The bond covered all three elevators in Ayr, Nebraska; Pauline, Nebraska; and Muriel Siding, Nebraska.
 
 
 8
 Along with the bond, Western Surety in 1962 obtained an indemnity agreement from the appellees. The appellees agreed to indemnify Western Surety for any and all losses or liabilities that Western Surety might sustain as a result of the execution of the bond. In the 1962 indemnity agreement the applicant-principal was identified as "Ayr Grain Co., a Corporation." No one disputes that this agreement covered all three elevators.
 
 
 9
 The 1962 indemnity agreement remained in effect until 1974, at which time Western Surety presented another indemnity agreement to the appellees. The 1974 agreement contained the same terms and conditions as the 1962 agreement except that the applicant-principal was identified as "Ayr Grain Co., DBA Pauline Elevator Co."
 
 
 10
 This case was commenced by Eugene Kort filing his complaint September 27, 1977, in the United States District Court for the District of Nebraska pursuant to 28 U.S.C. Sec. 1332 against Western Surety Company on the bond it had issued to the appellees. The complaint was for the value of the grain that Kort had stored with Ayr Grain Co. and not returned to him upon demand. Western Surety Company interpled other grain claimants in this action and, in addition, filed its third-party complaint against the appellees alleging that said persons would be liable to it for any claims it was required to pay on behalf of Ayr Grain Co. on said bonds by virtue of an indemnity agreement executed on March 18, 1974.
 
 
 11
 Almost two years after filing said third-party complaint Western Surety amended the same, contending that the Christensens and the Classens would be further liable to it by reason of an earlier executed indemnity agreement dated July 2, 1962. The appellees maintained that the first indemnity agreement had been superseded by the second one, and their liability was solely to claims paid by Western Surety for grain stored and warehoused at the Pauline elevator at Pauline, Nebraska, one of the three separate warehouses of Ayr Grain Co.
 
 
 12
 At a trial to the court on the claims of Kort and the other claimants against Western Surety, the court found for Kort and the others and against Western Surety. Judgment was entered in the amount of $364,804.20.
 
 
 13
 Before trial on the claim of Western Surety against the appellees, the district court, on motion of Western Surety, granted summary judgment in favor of Western Surety. The appellees filed a motion for reconsideration of the court's summary judgment. The district court, on reconsideration, rescinded its earlier order, concluding that there was a question of fact to be submitted to a jury on whether the 1962 indemnity agreement was superseded by the 1974 indemnity agreement, and whether the 1974 agreement only covered losses at the Pauline, Nebraska elevator. After the evidence was presented at trial, the jury found that there had been supersession and that the 1974 agreement was limited to the losses at the Pauline, Nebraska elevator only. Recovery was established for the appellant at $70,954.47, the amount of losses that were attributable to the Pauline elevator. Western Surety filed a motion for a new trial or in the alternative for judgment notwithstanding the verdict. The district court, in an order dated February 26, 1982, denied the motion. Western Surety then brought this appeal.
 
 
 14
 Western Surety contends that there are several points of error. It contends that it was error for the district court to reconsider and rescind its order granting Western Surety summary judgment. Also, the district court should have granted Western Surety's motion for a directed verdict at the end of the testimony, and that the verdict of the jury was not supported by the evidence. Western Surety further contends that an order of the Nebraska Public Service Commission was res judicata by which the court was bound. Finally, Western Surety contends the district court was in error in the award of attorney's fees. For the reasons stated herein, we affirm the judgment of the district court.
 
 
 15
 As to the district court reconsidering and rescinding its earlier order granting summary judgment in favor of Western Surety, Rule 59(e) of the Federal Rules of Civil Procedure provides that a motion to alter or amend a judgment shall be served not later than 10 days after entry of the judgment. A timely motion was made by appellees for reconsideration.
 
 
 16
 The trial court, upon reconsideration of a motion for summary judgment, is guided by Rule 56(c) of the Federal Rules of Civil Procedure. It provides that a judgment sought shall be rendered when the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. St. Louis County Bank v. United States, 674 F.2d 1207 (8th Cir.1982).
 
 
 17
 Upon appeal of an order denying summary judgment, this court is guided by the same standard as the trial court. Diebold v. Civil Service Commission of St. Louis County, 611 F.2d 697 (8th Cir.1979). That is, our duty is to determine whether there is a genuine issue as to any material fact and whether one party is entitled to a judgment as a matter of law. The burden is on the moving party to establish the absence of any such fact, both here and in the trial court below. Marks v. United States, 578 F.2d 261 (9th Cir.1978).
 
 
 18
 From a review of the record, we think the district court properly reconsidered and rescinded its earlier order. When properly allowed time to present their side, the appellees showed the existence of a question as to material facts concerning the agreements. The appellant, Western Surety, failed to overcome this by showing that these issues were not in dispute. The district court properly allowed the case to proceed to trial.
 
 
 19
 The next question concerns the verdict that the jury reached in the case. At the conclusion of the evidence in the case, the trial court refused to grant a directed verdict in favor of Western Surety. It submitted the case to the jury on two issues for the jury decision: (1) whether the 1974 indemnity agreement superseded the 1962 agreement, and (2) whether the 1974 agreement was limited by its terms to losses at the Pauline, Nebraska elevator only. The jury returned affirmative answers to both questions. The appellant, Western Surety, contends that the evidence clearly showed that the 1962 agreement and the 1974 agreement should both be enforced and that the losses Western Surety was entitled to recover were those at all three of the elevators. Therefore, Western Surety contends it should have been granted a directed verdict.
 
 
 20
 This court, on review of an appeal of an order denying a motion for a directed verdict, is subject to the same standard as the trial court in consideration of such a motion. That is, whether the evidence, viewed in the light most favorable to the non-moving party, is such that a reasonable person could not arrive at a contrary decision. Chouinard v. Chouinard, 568 F.2d 430, 433 (5th Cir.1978). The grant or the denial of a directed verdict is within the discretion of the trial judge, and this court is of the opinion that the denial of the motion of appellant, Western Surety, was not an abuse of that discretion. There was no error in denying the motion.
 
 
 21
 The appellant next contends, after the jury returned with its verdict, that the 1962 agreement was superseded by the 1974 agreement and that the 1974 agreement was limited to the Pauline, Nebraska elevator, the trial court erred when it denied Western Surety's motion for judgment notwithstanding the verdict or in the alternative for a new trial.
 
 
 22
 In reviewing this contention, the court is guided by its earlier decisions in Voegeli v. Lewis, 568 F.2d 89 (8th Cir.1977), and Singer Co. v. E.I. du Pont de Nemours & Co., 579 F.2d 433 (8th Cir.1978). In Voegeli the court concluded:
 
 
 23
 An appellate court may not substitute its view of the facts for that of the trier of fact unless it is in a position to hold that reasonable minds, viewing the evidence in a light most favorable to the prevailing party, could only have found otherwise than the trier of fact. (citations omitted). In Griggs vs. Firestone Tire and Rubber Co., 513 F.2d 851, 857 (8th Cir.1975), ... we held that, in passing upon a motion for judgment n.o.v., the trial court and the appellate court are:
 
 
 24
 (1) to consider the evidence in the light most favorable to the ... parties prevailing with the jury; (2) to assume that all conflicts in the evidence were resolved ... in the favor of the [prevailing parties]; (3) to assume as proved all facts which the [prevailing parties'] evidence tends to prove; (4) to give the [prevailing party] the benefit of all favorable inferences which may reasonably be drawn from the facts proved; and (5) to deny the motion if, reviewing the evidence in this light, reasonable men could differ as to the conclusion to be drawn from it.
 
 
 25
 568 F.2d at 92.
 
 
 26
 In Singer Co., it was stated:A trial court cannot substitute its judgment of the facts for that of the jury, and should grant judgment n.o.v. '... only where the evidence points all one way and is susceptible of no reasonable inferences sustaining the position of the non-moving party.' (citations omitted).
 
 
 27
 579 F.2d at 441.
 
 
 28
 On the two issues submitted to the jury by the court, objected to by appellant, we first look at the question of superseding agreements. In doing this, the law of the State of Nebraska is applicable. In DeFilipps v. Skinner, 211 Neb. 801, 320 N.W.2d 737 (1982), the Nebraska Supreme Court made the following statement:
 
 
 29
 A contract complete in itself will be conclusively presumed to supersede and discharge another one made prior thereto between the same parties concerning the same subject matter where the terms of the latter are inconsistent with those of the former so that they cannot subsist together. In re Estate of Wise, 144 Neb. 273, 13 N.W.2d 146 (1944).
 
 
 30
 Where it is claimed that by reason of inconsistency between the terms of an agreement and those of the old the old one is discharged, the fact that such was the intention of the parties must clearly appear. An inspection of the contracts, together with examination of the circumstances, may show that the latter contract was intended as supplementary to the first. In re Estate of Wise, supra, ...
 
 
 31
 320 N.W.2d at 738.
 
 
 32
 Also, the Nebraska Supreme Court held in another case as applicable here, that:
 
 
 33
 'A contract may be rescinded or discharged by acts or conduct of the parties inconsistent with the continued existence of the contract, and mutual assent to abandon the contract may be inferred from the attendant circumstances and conduct of the parties.' 17 Am.Jur.2d, Contracts, Sec. 494, p. 967 .... 'The abandonment of a contract is a matter of intention to be ascertained from the facts and circumstances surrounding the transaction from which the abandonment is said to have resulted. An abandonment of a contract need not be expressed but may be inferred from the conduct of the parties and the attendant circumstances.' 17 Am.Jur.2d, Contracts, Sec. 484, p. 954.
 
 
 34
 Davco Realty Co. v. Picnic Foods, Inc., 198 Neb. 193, 199-200, 252 N.W.2d 142 (1977).
 
 
 35
 The appellant, Western Surety, proposed the 1974 agreement in order to update its records. By all accounts the 1962 agreement and the 1974 agreement contained the same terms and conditions except they are inconsistent in that the two applicant-principals in the agreements are described differently. The 1962 agreement lists the principals as "Ayr Grain Co., a Corporation." The 1974 agreement listed the principal as "Ayr Grain Co. DBA Pauline Elevator Co."
 
 
 36
 At trial there was evidence that the appellant originally made its claim under the 1974 agreement. It wasn't until three years after the complaint was filed that Western Surety amended its complaint to include the 1962 agreement. The appellant had knowledge of the agreement made in 1962 during this time, but failed to initially make a claim under it.
 
 
 37
 Also, evidence of the intention to supersede the 1962 agreement can be found in the physical treatment by Western Surety of the 1962 agreement. It was enough, along with the rest of the evidence, to show that there was the intention on the part of the parties to supersede the 1962 agreement.
 
 
 38
 The other question submitted to the jury was whether the 1974 agreement was limited in its coverage to the Pauline, Nebraska elevator by its terms. The construction to be given to a written instrument in Nebraska has been established by the Supreme Court of Nebraska by the following statement, to wit:
 
 
 39
 A cardinal principle of construction of written instruments is that an interpretation shall be made which will reflect the true intention of the parties. Ely Construction Co. v. S & S Corporation, 184 Neb. 59, 165 N.W.2d 562 (1969).In interpreting a written contract, the meaning of which is in doubt and dispute, the court, in order to determine its meaning, will consider all the facts and circumstances leading up to and attending its execution, and will consider the relation of the parties, the nature and situation of the subject matter, and the apparent purpose of making the contract. McBride v. Fort Kearney Hotel, Inc., 185 Neb. 518, 176 N.W.2d 911 (1970).
 
 
 40
 Younker Brothers, Inc. v. Westroads, Inc., 196 Neb. 168, 241 N.W.2d 679, 683 (1976).
 
 
 41
 In the instant case there was ample testimony to support the jury verdict limiting application to the Pauline, Nebraska elevator. In the licensing and the bonding of the elevator, "Ayr Grain Co. DBA Pauline Elevator Co." was used to refer to the Pauline elevator only. The wording in the licenses and the bonds reflect this. The common usage of the words before the 1974 indemnity agreement, known to Western Surety, indicate that they only refer to the Pauline elevator. The use of the words by the appellant in this case could have reasonably been taken to mean, by the jury, that the losses would be limited to the Pauline, Nebraska elevator only. The verdict of the jury in this respect will be allowed to stand.
 
 
 42
 The appellant next contends that the district court erred in the amount of attorney's fees it awarded to the appellant. Western Surety contends that the indemnity agreement provided that the appellees were to indemnify Western Surety for losses it incurred as a result of the recovery of Kort and the other grain claimants on the bond. The appellant also contends the indemnity agreement provided that the appellees were to sustain the costs and attorney's fees that Western Surety incurred as a result of defending against the claims of Kort and the other grain claimants. The district court, in its memorandum and order on post trial motions dated February 26, 1982, included in its judgment against the appellees the pro rata share of the attorney's fees incurred in the claims of the grain claimants. We think that the district court properly allowed for attorney's fees on behalf of the appellant.
 
 
 43
 The last contention of the appellant is that the district court committed error when it refused to set aside earlier judgments of several grain claimants or to grant the appellant a new trial in order to permit the appellant to enter into the record of the case an order entered by the Nebraska Public Service Commission dated January 12, 1982. The appellant contends that the order held that the district court's decision in this case was not in accordance with the Nebraska law on performance under the bonds and was incorrect. The appellant feels that such an order, when it concerns the regulation of grain elevators which are under the control of the NPSC, is binding upon the district court. The district court, in its memorandum and order on post trial motions dated February 26, 1982, held that the NPSC order and the Kort case dealt with two different matters. After a review of the record, we agree with the district court. It was not error to disregard the NPSC's order.
 
 
 44
 The judgment of the district court is affirmed.
 
 
 
 *
 Oren Harris, Senior District Judge, Eastern and Western Districts of Arkansas, sitting by designation
 
 
 [1]
 Honorable Warren K. Urbom, Chief Judge, District of Nebraska